## A & M LAND DEVELOPMENT CO. *v.* MILLER.

1. FRAUD—PRESUMPTIONS.

Fraud is not to be presumed.

2. SAME—BURDEN OF PROOF—EVIDENCE.

The party asserting a cause of action based on fraud has the burden of establishing it by clear and satisfactory proof.

3. APPEAL AND ERROR—CHANCERY CASES—FINDINGS OF TRIAL COURT —EVIDENCE.

The Supreme Court accords much weight to the findings of a trial court in an equity case involving the oral testimony of witnesses, since the trial court has the advantage of seeing the witnesses in court and listening to their testimony and of determining the weight to be given it whereas the Supreme Court determines the issues involved from the appendices of counsel and the transcript of testimony filed.

4. FRAUD — EVIDENCE — RESIDENTIAL USE OF SUBDIVISION LOTS — OPINION.

Evidence of fraud arising from claimed misrepresentation of defendant and his agents as to 91 lots in 140-lot subdivision he had then recently purchased, especially with reference as to their suitability for residential use, arising from claimed extensive

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur, Fraud and Deceit § 256.
[2] 24 Am Jur, Fraud and Deceit §§ 255, 278.
[3] 3 Am Jur, Appeal and Error § 912.
[4, 5] 23 Am Jur, Fraud and Deceit § 27.
[6] 24 Am Jur, Fraud and Deceit § 288.
[7] 55 Am Jur, Vendor and Purchaser §§ 23, 24.
[9] 55 Am Jur, Vendor and Purchaser §§ 593, 595.
[10] 55 Am Jur, Vendor and Purchaser § 589.
   Partial rescission of contract.  148 ALR 417.

mass grading operations subsequent to report by engineers as to percolation tests conducted thereon, *held,* insufficient to establish more than a mere expression of an opinion, hence, insufficient to substantiate a finding of fraud as to parties dealing at arm's length, especially where the basis for the opinion is shown.

5. SAME—CONTRACT—OPINION.

A mere expression of opinion does not constitute representation of an existing fact when the parties to contract, sought to be cancelled for fraud, are dealing at arm's length, especially when the basis for the opinion is shown.

6. SAME—EVIDENCE.

Finding of trial court that plaintiff had not proved that it had entered into land contract for purchase of 91 lots of 140-lot subdivision as result of any fraudulent inducement or misrepresentation by defendant or that it was misled to its prejudice by engineers' report as to percolation tests which report was furnished by defendant and related to the subdivision as a whole *held,* supported by record presented.

7. VENDOR AND PURCHASER—LAND CONTRACT—FAILURE OF CONSIDERATION—SUITABILITY OF SUBDIVISION LOTS FOR BUILDING OPERATIONS.

Plaintiff, a residential building developer, which had purchased 91 lots of a 140-lot subdivision, *held,* not to have substantiated its claim of failure of consideration for the contract in that the premises were unsuitable for building operations, where plaintiff desires to keep 44 lots that have been deeded to it, asks for specific performance as to 5 lots and rescission as to remaining 42 lots and it does not appear that plaintiff will necessarily be precluded from building operations in the future.

8. CANCELLATION OF INSTRUMENTS—EQUITY.

The cancellation of an executed contract is the exertion of the most extraordinary power of a court of equity.

9. VENDOR AND PURCHASER—LAND CONTRACT—RESCISSION—FRAUD.

The fact that plaintiff building developer's investment in 91 lots sold to it by defendant did not turn out as well as its officers had hoped and expected does not afford ground for equitable relief by way of rescission, where plaintiff is not shown to have been defrauded or induced to make the land contract in question by misrepresentations on the part of defendant or his agents, as to material facts.

10. SAME—LAND CONTRACT—PARTIAL RESCISSION—FAILURE OF CON-
SIDERATION—VALUE—MISTAKE—FRAUD.

Partial rescission of land contract for purchase of 91 subdivision
lots by which plaintiff seeks to return 42 lots *held*, not justified
under record presented either on the ground of failure of con-
sideration or mistake, where plaintiff received the entire
quantity of land for which it contracted to purchase, and
while perhaps not as valuable as it had expected, it is not
without value, and fraud is not established.

Appeal from Wayne; Gilmore (Horace W.), J.
Submitted October 15, 1958. (Docket No. 56, Cal-
endar No. 47,442.) Decided January 12, 1959.

Bill by A & M Land Development Co., a Michigan
corporation, against Samuel A. Miller and Bernice
Miller for partial rescission of land contract, for
specific performance of part thereof, and for ac-
counting and damages arising from alleged fraud
and misrepresentation. Bill dismissed. Plaintiff
appeals. Affirmed.

*Joel G. Jacob* and *Meyer R. Rubin* (*Henry M.*
*Butzel,* of counsel), for plaintiff.

*James E. Haggerty* and *Joseph J. Beck* (*Irwin*
*I. Cohn* and *John Sklar,* of counsel), for defend-
ants.

CARR, J. Plaintiff brought this suit in equity seek-
ing the recovery of damages, partial rescission of a
land contract for the sale and purchase of real prop-
erty, an accounting, and other equitable relief. The
bill of complaint filed alleges, as bases for the cause
of action, fraud, misrepresentation, failure of con-
sideration, and mistake. The subject matter of the
land contract in question consists of 91 lots located
in Bloomfield Knolls subdivision, West Bloomfield
township, Oakland county, Michigan. Defendant
Samuel A. Miller (hereinafter referred to as the de-

fendant) purchased said lots in the late summer of 1955. He was at the time engaged in the business of buying and selling land, and shortly after acquiring said lots he listed them with real-estate brokers who caused to be published in a Detroit newspaper an advertisement indicating the location of the property with the addition of the statement, "Ready to build now."

The plaintiff corporation was engaged at the time in the construction of residences. Its officers saw the advertisement published by the brokers, contacted them, and were shown the property. It was their claim on the trial of the cause that the real-estate salesman, acting in defendant's behalf, advised them that there was neither water nor sewage facilities on the property, and that it would be necessary to install septic tanks. The correctness of such statements is not questioned, but it is claimed on behalf of plaintiff that further statements were made by the salesman, and subsequently by defendant, that the soil was suitable for such installations and that such fact could be established by documents.

In accordance with the oral conversation defendant caused to be furnished to plaintiff's officers acting in its behalf in the matter a report, copy of which was attached to the bill of complaint as exhibit A, as prepared by 2 engineers of Oakland county under date of November 4, 1954. Said report dealt with the matter of sewage disposal and indicated that the sponsor therefor was the company from whom defendant later purchased a part of the lots in the subdivision. It indicated that on the tract of land, comprising 44 acres, a total of 31 percolation tests had been made, the results disclosing the presence of sand and gravel, and in some instances yellow clay, in varying proportions. Apparently the form used

was prescribed by the Federal housing administration office, the information being sought in connection with applications for building loans. No information was contained in the report with reference to water-table elevations.

The report as prepared by the engineers doing the work was submitted to the Oakland county health department which through its director of the sanitation division added the following comment under date of April 11, 1955:

"We have examined the above results of the percolation tests and other information developed in connection with this subdivision. It is our opinion that the tract as a whole is:

"[X] Suitable for the use of individual septic-tank systems provided:

"1. The subdivision is laid out so as to provide on each building plot a gross area of 500 sq. ft. per bedroom suitable for constructing a subsurface disposal field.

"2. The tract, or portions of the tract designated, conforms to the following conditions:  *  *  *

"It is understood that the conclusions rendered on this report do not cover the installation of the individual septic-tank systems. The design, construction, and installation of each system should be based upon specific conditions affecting each building plot."

Plaintiff's claims of fraud and misrepresentation on the trial of the case in circuit court were predicated on the advertisement of the lots by the broker, the statements of defendant and his agent, and the report, copy of which, it is claimed, was submitted to plaintiff's officers by way of confirmation of the oral representations. Defendant and the salesman in question denied making the representations as

claimed on behalf of plaintiff. Following trial the circuit judge concluded that plaintiff had not established its right to the relief sought by it, and entered a decree dismissing the bill of complaint. Plaintiff has appealed, claiming, in substance, that the conclusions of the trial judge, as set forth in a written opinion filed in the cause, were not in accord with the proofs.

The principal question at issue in the case is whether plaintiff established by competent proof that there was fraud or misrepresentation on the part of the defendant, on which plaintiff relied in executing the land contract. The rule is well established in Michigan and elsewhere that fraud is not to be presumed, and the party asserting a cause of action based thereon has the burden of establishing it by clear and satisfactory proof. *Candler* v. *Heigho*, 208 Mich 115; *Marshall* v. *Ullmann*, 335 Mich 66; *Columbus Pipe & Equipment Co.* v. *Sefansky*, 352 Mich 539. We have in mind, also, that the trial judge had the advantage of seeing the witnesses in court and listening to their testimony. In consequence he was, at the conclusion of the proofs, in better position to determine the weight to be given to the testimony of each witness than are the members of this Court who must determine the issues involved on the basis of the appendices of counsel and the transcript of testimony filed here.

Bloomfield Knolls subdivision as platted comprised 140 lots aggregating approximately 44 acres. The owner of the property from whom defendant purchased 91 of the lots in the late summer of 1955 built residences on 49 of the lots. Whether all of such residences had been completed before the remaining lots were sold to defendant does not appear. It is evident, however, that the lots in the subdivision were considered from the practical standpoint as

being ready for building operations. The advertisement in the newspaper by which plaintiff's attention was first directed to the property was not false or fraudulent. The sanitation code of the county had not then been adopted, and did not become effective until September 1, 1956. At the time of the publication of the advertisement, and the subsequent events involved in this case, the permit provided for by said code was not required. Neither does it appear that the officers of plaintiff corporation relied on the advertisement in entering into the contract for the purchase of the lots from defendant. They consulted the brokers who had the listing of the property for sale and talked with defendant himself, with particular reference, as they claimed, to the suitability of the soil for the installation and operation of septic tanks.

It is a fair inference from the testimony offered on behalf of plaintiff that its officers were not satisfied with the statements made by the salesman and by defendant, and desired confirmation thereof. It is significant that no claim is made that either defendant or his agent represented that he had made percolation tests on any of the lots in question, or that either had personal knowledge concerning such tests. As men having some familiarity with building operations it may be assumed that plaintiff's officers realized that the character of the soil beneath the surface to the required depth for the installation of septic tanks may be determined only by tests. The record clearly indicates that such is the fact, and further justifies the conclusion that the officers who executed the land contract in plaintiff's behalf were familiar with building operations generally, and their testimony as to their seeking information from defendant and his agent as to the character of the soil in the

subdivision suggests that they appreciated the importance of the matter.

This brings us to a consideration of the report, made in November, 1954, by the engineers above mentioned, on the basis of which the Oakland county health department, through the director of its sanitation division, made the statement above quoted. It appears from said statement that the department merely expressed an opinion on the basis of the 31 tests that the report indicated had been made in the 44-acre subdivision. It is significant, also, that attention was called directly to the fact that the conclusions drawn from the report did not cover the installation of individual septic-tank systems, and that the construction and installation of each such system should be based upon conditions affecting the building plot. The results of the 31 tests, specifically detailed in the report, were such as to clearly indicate that the character of the soil varied greatly throughout the subdivision. The average time required for 1 inch of water to seep away varied from 5 seconds to 40 minutes.

No claim is made that the tests were not accurately conducted by the engineers, nor is the verity of the report assailed. On behalf of plaintiff it is argued, in substance, that conditions in the subdivision, and particularly with reference to the lots involved in this case, were changed following the making of the report and the expression of opinion thereon by the county health department through the director of its sanitation division. It is said that grading operations were conducted, amounting to "mass grading." The proof does not disclose the actual extent of such operations or their location. There is testimony in the record that if there was any extensive grading it occurred during the late spring and summer of 1955. At that time the roads running through the

subdivision had been laid out and graveled. It is not claimed that grading operations were so extensive as to interfere with those roads. Whether top soil was removed from or added to the lots in question here is a matter of conjecture. It is a matter of inference, however, that if any such extensive grading operations as would have affected materially the report of the engineers as made in November, 1954, were actually carried on plaintiff's representatives could scarcely have failed to observe the resulting situation when they viewed the premises in September, 1955.

The report may not be regarded as a representation by defendant of the exact situation existing at the time he entered into the contract with plaintiff. Such report spoke for itself, and it may not be said on the record before us that there was any material change in the lots here involved thereafter and prior to September of the following year. We are not concerned with what may have occurred elsewhere in the subdivision. Doubtless in connection with construction work being conducted on the 49 lots retained by defendant's grantor there may have been a certain amount of surface grading.

It may also be noted that accompanying the report of the engineers, and attached thereto, was a topographical map indicating a variation in elevation ranging from 980 feet on the southeast portion of the subdivision to approximately 940 feet on the northeast corner thereof. Such a difference might well suggest a variation in the character of the soil. It further appears from testimony that in some places the water table was so near the surface of the ground as to interfere with the installation and operation of septic tanks. No claim is made that there was any misrepresentation with reference to the water table.

The percolation tests made by the engineers in preparing for their report of November, 1954, indicate the variable character of the soil. It may be noted also in this connection that 2 of plaintiff's witnesses testified that variations may occur within a lot 85 x 125 feet, indicating that if a number of tests are conducted on such a lot different results may be obtained therein. As before pointed out, no statement was made by either the salesman or by defendant as to personal knowledge of any percolation tests. Assuming that the conversations occurred as claimed on behalf of plaintiff, it appears that defendant and his agent referred to the report of the engineers as the basis for their statements. That report was considered by the director of the sanitation division of the county health department as justifying the expression of an opinion that the subdivision as a whole was suitable for the use of septic tanks, such opinion being qualified by the further statement that the conclusion expressed did not cover the installation of individual septic-tank systems. It must be assumed that with knowledge of what the percolation tests listed in the report actually indicated, that is, a material variation in soil conditions throughout the subdivision, the opinion therein expressed was accepted. A mere expression of opinion is not, however, a representation of an actual existing fact when the parties to a contract are dealing at "arm's length," especially so when the basis for the opinion is shown. The report itself cannot be extended by construction beyond its plain language, and defendant and agent in furnishing said document as the basis on which they relied were in fact indicating the acceptance of the opinion therein stated.

In *Mayo* v. *Latham,* 159 Mich 136, suit was brought to recover the price of goods sold under contract. The defendant claimed that the order was obtained by fraud. In rejecting said claim, it was said (p 137):

"The fraud claimed is that the agent who sold the goods said that the price charged was as cheap or cheaper than they could be bought for elsewhere. We think the record discloses only an expression of opinion on the part of the agent, and, even though it should appear that similar goods could have been secured elsewhere at a less price, it would be no ground for annulling the contract. *Collins* v. *Jackson,* 54 Mich 186; *Moon* v. *McKinstry,* 107 Mich 668, 673."

See, also, *Hammer* v. *Martin,* 205 Mich 359.

We are in accord with the conclusion of the trial court that plaintiff failed to establish by the requisite degree of proof that it was induced to enter into the land contract by fraud or misrepresentation. There is no showing of any intentional misstatement of material facts with intent to injure plaintiff. In the final analysis plaintiff's claim is that it was misled to its prejudice by the report furnished to it by defendant, but plaintiff's representatives must have been apprised thereby that the opinion expressed on the basis of the percolation tests made by the engineers was merely an opinion with reference to the subdivision as a whole, and did not relate to all lots in the subdivision or to any particular lots. Plaintiff's officers could scarcely have failed to understand that the statements made by defendant and his salesman were to be construed in the light of the report and the opinion expressed therein. There is no basis for any possible claim that said opinion was not given in good faith and in fact no question is

raised in this regard. It is apparent also that plaintiff's representatives were unwilling to rely on the statements or opinions of either defendant or the salesman, and sought the production of the basis therefor. As we have seen, there was nothing false or fraudulent in the report. Neither it nor the oral statements made in connection therewith afford a proper basis for the granting of the relief which plaintiff seeks.

Plaintiff also seeks relief on the ground of failure of consideration, such claim being based on the premise that the lots covered by the land contract, which it seeks to have returned to defendant, are unsuitable for building purposes. The proofs do not establish that such is the case with all of said lots, nor does it appear that plaintiff will necessarily be precluded from continuing building operations in the future. At the time of the trial it had constructed or had in the process of construction residences on 44 of the 91 lots. As to these it does not seek rescission. It further appears that it has constructed a water system covering partially, or wholly, 5 of the lots title to which has not as yet been conveyed by defendant. As to these 5 lots plaintiff asks that defendant be required to specifically perform and to execute deeds. In other words, we have an unusual situation in which the plaintiff desires to keep the 44 lots that have been deeded to it, asks for specific performance as to the 5 lots, and seeks rescission as to the remaining 42 lots.

Emphasis is placed on the fact that permits for the construction of residences on some of these lots were denied. Whether such action was justified is perhaps a matter of opinion. The proofs disclose that the sanitarian of the county health department had stated that if the systems installed on the lots on which plaintiff has built residences prove satisfac-

tory he would again issue septic-tank permits. It may not be assumed that the lots which plaintiff would have the court order returned to defendant are without value. Problems may be presented in the use of some of them for residence purposes, but we may not speculate in this regard.

It is quite possible that for various reasons plaintiff's investment did not turn out as well as its officers had hoped and expected. If such is the situation equitable relief by way of rescission may not be granted unless plaintiff was defrauded, or was induced to make the contract in question by misrepresentations, on the part of defendant or his agent, as to material facts. *Shultz* v. *McCarty,* 253 Mich 445. In *Atlantic Delaine Company* v. *James,* 94 US 207, 214 (24 L ed 112), it was declared that:

"Cancelling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured by them."

Under the facts in the case at bar plaintiff is not entitled to the relief sought by it on the ground of failure of consideration. The same situation obtains with reference to the claim that there was a mistake, either mutual or on the part of plaintiff, of such character as to justify a court of equity in granting partial rescission and damages. There was here no mistake as to the form or substance of the contract between the parties, or the description of the property constituting the subject matter. The situation involved is not at all analogous to that presented in

*Scott* v. *Grow,* 301 Mich 226 (141 ALR 819). There the plaintiff sought relief by way of reformation of a deed on the ground that the instrument of conveyance had not been drawn in accordance with the intention and agreement of the parties. It was held that the bill of complaint stated a case for the granting of equitable relief by way of reformation. In the case at bar plaintiff received the property for which it contracted. The fact that it may be of less value than the purchaser expected at the time of the transaction is not a sufficient basis for the granting of equitable relief, neither fraud nor reliance on misrepresentation of material facts having been established.

We are in accord with the conclusions of the trial judge and the decree entered is affirmed, with costs to defendants.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.