DINGEMAN v REFFITT

Docket No. 82851. Submitted January 7, 1986, at Grand Rapids. Decided June 3, 1986.

Plaintiffs, Harry J. Dingeman and Jane R. Dingeman, owned two parcels of lakefront property in Antrim County on the east and west sides of West Torch Lake Drive. At the request of plaintiffs, the county department of health evaluated the east parcel relative to installation of septic tanks on that parcel. The health department concluded that, due to the composition of the soil, it would not approve any application to install on-site sewage disposal systems on the east parcel. A subsequent second test on the east parcel resulted in the same conclusion. Plaintiffs thereafter hired an engineer to inspect the west parcel for an opinion on its suitability for on-site sewage disposal. The engineer advised plaintiffs that the west parcel was suitable for on-site sewage disposal. The engineer also advised plaintiffs that the only practical method of providing sewage disposal for the east parcel would be to install an expensive pump disposal system to pump sewage from the east parcel to a drain field on the west parcel. Plaintiffs eventually sold both parcels to defendant, Ronald G. Reffitt, who was aware of the problems concerning sewage disposal on the east parcel. Defendant then commenced the construction of a home on the east parcel, intending to install a sewage disposal system which would pump the sewage to a drain field on the west parcel. However, defendant discovered a site on the east parcel that he thought might be appropriate for an on-site sewage disposal system and later obtained a permit for such a system on the east parcel. After learning that a permit was issued for an east parcel system, plaintiffs filed suit in the Antrim Circuit Court seeking a rescission or, in the alternative, a reformation of the contract to reflect the fair market value of the property.

REFERENCES

Am Jur 2d, Contracts §§ 22, 143-150, 501.

Which of conflicting descriptions in deeds or mortgages of fractional quantity of interest intended to be conveyed prevails. 12 ALR4th 795.

See also the annotations in the ALR3d/4th Quick Index under Contracts; Mistake; Reformation of Instruments.

Plaintiffs alleged two mutual mistakes of fact in the formation of the contract: (1) that the soil characteristics of the east parcel precluded an on-site sewage system, and (2) that the Antrim County Department of Health would never issue a sewage permit. The court, William R. Brown, J., granted defendant's motion for summary judgment on the ground that there was no genuine issue as to any material fact and that defendant was entitled to judgment as a matter of law. Plaintiffs appealed. *Held:*

1. Plaintiffs and defendant erroneously assumed that the east parcel would not be suitable for on-site sewage disposal at the time they entered into the contract. However, this erroneous assumption did not materially affect the agreed performances of the parties, since defendant had intended to bear the cost of an expensive system to pump sewage to the west parcel.

2. The "as is" clause incorporated into the contract was a persuasive indication that the parties intended that defendant would bear both the risks and the benefits arising from the condition of the property.

3. The mutual mistake in this case was not intrinsic to the instrument signed by the parties. Reformation of the contract is therefore a remedy not available to plaintiffs.

4. A review of the record by the Court of Appeals indicated that the grant of summary judgment was not premature, since there were no material issues of fact to be resolved.

Affirmed.

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — ISSUES OF MATERIAL FACT — COURT RULES.

A motion for summary judgment based on the ground that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law tests whether there is factual support for a claim; the court, when passing upon such motion, must consider the pleadings, affidavits, depositions, admissions and other documentary evidence available to it (GCR 1963, 117.2[3], now MCR 2.116[C][10]).

2. CONTRACTS — MISTAKE — RESCISSION.

A contract may be rescinded because of mutual mistake, but the remedy is granted only in the sound discretion of the court.

3. CONTRACTS — MISTAKE — RESCISSION.

Rescission of a contract for mutual mistake is appropriate where the mistaken belief relates to a basic assumption of the parties upon which the contract was made, and which materially affects the agreed performances of the parties; however, rescis-

sion is not available to relieve a party who has assumed the risk of loss in connection with the mistake.

4. VENDOR AND PURCHASER — LAND CONTRACTS — MISTAKE — RESCISSION — RISK OF LOSS.

The inclusion of an "as is" clause in a land contract is a persuasive indication that the parties intended that the vendee would bear both the risks and the benefits of the present condition of the property; rescission of such a contract on the basis of mutual mistake is not available to the vendor upon a later discovery that the installation of an on-site sewage system would be possible, would comply with health regulations, and could be completed at a reasonable cost contrary to the belief of the parties at the time they entered into the contract.

5. REFORMATION OF INSTRUMENTS — CONTRACTS — MISTAKE.

Reformation of a contract because of a mutual mistake as to an extrinsic fact will not be allowed even where it is one which probably would have caused the parties to make a different contract, because courts cannot make a new contract for the parties.

*Suo, Noble & Wiseman* (by *Sidney J. Suo*), for plaintiffs.

*Zerafa Law Offices, P.C.* (by *Richard J. Zerafa*), for defendant.

Before: R. M. MAHER, P.J., and ALLEN and R. R. LAMB,* JJ.

PER CURIAM. Plaintiffs appeal as of right from an order granting defendant's motion for summary judgment.

Plaintiffs were the owners of two parcels of lakefront property located in Antrim County on the east and west sides of West Torch Lake Drive. In 1973, plaintiffs contemplated developing the east parcel of property and contacted the local health department for a land evaluation concerning the installation of septic tanks on the property.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Pursuant to plaintiffs' request, Walter Franczek of the Department of Health examined the east parcel and concluded that, due to the composition of the soil, serious problems existed for residential development of the property at least with regard to on-site sewage disposal systems. In 1978, plaintiffs received a letter from Franczek in which he stated that any application to install on-site sewage disposal systems on the east parcel would be denied.

In the summer of 1979, plaintiffs commissioned a second set of tests to be done. The tests resulted in a similar conclusion that the east parcel site would not permit on-site sewage disposal. In 1978, plaintiffs hired Art Lennox of Lennox Engineering to inspect the west parcel for an opinion on its suitability for on-site sewage disposal. After examining the parcel, Lennox advised plaintiffs that the west parcel was suitable for an on-site sewage disposal permit. Lennox also informed plaintiffs that the only practical method of providing sewage disposal for the east parcel would be to install an expensive pump disposal system to pump sewage from the east parcel to a drain field on the west parcel.

On April 22, 1980, plaintiffs listed the property with Schmidt Real Estate, Inc. The listing agreement stated:

> Prime Torch Lake frontage. However, Antrim County Health Department will not issue septic permit due to heavy clay soils. Development may be possible with drain field constructed on property located to west of road or with central sewer system.

In the summer of 1980, defendant received a brochure from Schmidt Realty describing the property as follows:

34. 600 FEET ON TORCH LAKE: 600' on lake and over 1200' deep. Located along West Torch Lake Drive. Heavy soils will not permit septic permits except possible drain field located on west side of road. $75,000.00.

On August 9, 1980, plaintiffs and defendant executed a land contract for the purchase of the property for $75,000.

In the summer of 1983, defendant commenced construction of a home on the east parcel with the intent of installing a disposal system on the property which would pump the sewage to a drain field on the west parcel. While transporting trees on the east parcel in July, 1983, defendant found an area of sand and gravel that he thought might be appropriate for an on-site septic system. He immediately applied for and was granted a permit for an on-site sewage disposal system on the east parcel. The permit was issued on August 1, 1983.

After learning of the issuance of the permit for the east parcel, plaintiffs commenced the instant action, seeking reformation or rescission of the land contract on the ground that there had been a mutual mistake in the formation of the contract. At a hearing held on August 20, 1984, and in a corresponding order dated October 15, 1984, the trial court granted defendant's motion for summary judgment.

Defendant's motion for summary judgment was based on GCR 1963, 117.2(3), now MCR 2.116(C)(10). A motion for summary judgment on the ground that there is no genuine issue as to any material fact tests whether there is factual support for a claim. When passing upon a motion based on rule 117.2(3), the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence available to it. *Long-*

*ley v Blue Cross & Blue Shield of Michigan,* 136
Mich App 336; 356 NW2d 20 (1984).

Plaintiffs argue that there are two mutual mistakes of fact: (1) that the soil characteristics of the east parcel precluded an on-site sewage system, and (2) that the Antrim County Department of Health would never issue a sewage permit. Based upon these alleged mutual mistakes, plaintiffs seek rescission of the contract or, in the alternative, reformation of the land contract to reflect the fair market value of the property.

A contract may be rescinded because of a mutual mistake of the parties, however, this equitable remedy is granted only in the sound discretion of the trial court. *Lenawee Co Bd of Health v Messerly,* 417 Mich 17, 26; 331 NW2d 203 (1982). *Harris v Axline,* 323 Mich 585; 36 NW2d 154 (1949). The determination of whether plaintiffs are entitled to rescission involves a bifurcated inquiry: (1) was there a mistaken belief entertained by one or both of the parties to a contract? and (2) if so, what is the legal significance of the mistaken belief?

> A contractual mistake "is a belief that is not in accord with the facts." 1 Restatement Contracts, 2d, § 151, p 383. The erroneous belief of one or both of the parties must relate to a fact in existence at the time the contract is executed. That is to say, the belief which is found to be in error may not be, in substance, a prediction as to a future occurrence or non-occurrence. [*Lenawee Co, supra,* p 24. Citations omitted.]

At the time the parties executed the land contract, they believed that the health department would not issue a permit for an on-site septic tank because of the heavy clay composition of the soil on the east parcel. This belief proved to be errone-

ous because, after purchasing the property, defendant discovered a sand and gravel area on the east parcel which proved suitable for an on-site septic tank. As a result, he was issued the permit which plaintiffs unsuccessfully sought. Contrary to the parties' belief, the east parcel was perkable. Thus, when the parties entered into the land contract they were laboring under a mutual mistake of fact, and we must determine the legal significance of that mistaken belief.

In *Lenawee Co, supra,* pp 26-28, the Supreme Court criticized its prior decisions which distinguished mistakes affecting the essence of consideration[1] from those which go to the quality or the nature of the thing bargained for.[2] Noting that such distinctions do not provide a satisfactory analysis of the nature of the mistake sufficient to invalidate a contract, the Supreme Court held that a case-by-case analysis is the better approach. *Lenawee Co, supra,* p 29. Under this approach, rescission is appropriate where "the mistaken belief relates to a basic assumption of the parties upon which the contract is made, and which materially affects the agreed performances of the parties." *Id.* Rescission is not available, however, to relieve a party who has assumed the risk of loss in connection with the mistake. *Lenawee Co, supra,* p 30.

In this case, the parties erroneously assumed that the east parcel was not suitable for on-site sewage disposal. Unlike *Lenawee Co,* however, the erroneous assumption does not materially affect the agreed performances of the parties. In *Lenawee Co,* the parties to the land contract believed the land was suitable for human habitation and

[1] *A & M Land Development Co v Miller,* 354 Mich 681; 94 NW2d 197 (1959).

[2] *Sherwood v Walker,* 66 Mich 568; 33 NW 919 (1887).

could be utilized to generate rental income. Their erroneous assumptions precluded the vendees' intended use of the land. In this case, defendant bought the land with the intent of building a home on the east parcel even though he would have to bear the cost of installing an expensive system to pump the sewage to the west parcel.[3]

Even if we were to determine that the mutual mistake related to a basic assumption and materially affected the agreed performance of the parties, we do not believe rescission of the contract would be appropriate. In cases of mistake by two equally innocent parties, this Court, in the exercise of its equitable powers, must determine which blameless party should assume the loss resulting from the misapprehension they shared. *Lenawee Co, supra,* p 31. We do so by examining our notions of what is reasonable and just under all the circumstances.

In this case, equity suggests that the sellers should assume the loss of the mistake. Guided by the standard announced in 1 Restatement Contracts, 2d, § 154, pp 402-406,[4] we look to whether the parties have agreed to the allocation of the risk between themselves. The "as is" clause incor-

---

[3] Plaintiffs argue that they never would have sold the land had the east parcel been "capable of any sewage system or supporting a residence." We find this argument without merit as it is clear from the record that plaintiffs could have built a home on the east parcel and pumped the sewage to the west parcel, albeit at some expense.

[4] Section 154, which was cited with approval in *Lenawee Co, supra,* p 30, n 12, reads as follows:

§ 154. When a Party Bears the Risk of a Mistake
A party bears the risk of a mistake when
(a) the risk is allocated to him by agreement of the parties, or
(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

porated into the contract[5] is a persuasive indication that the parties intended that defendant would bear both the risks and the benefits of the present condition of the property.

Plaintiffs alternatively sought reformation of the land contract. The burden of proof is upon the party seeking reformation to present clear and convincing evidence that the contract should be reformed in order to carry out the true agreement of the parties. *E R Brenner Co v Brooker Engineering Co,* 301 Mich 719, 724; 4 NW2d 71 (1942). In order to decree the reformation of a written instrument on the ground of mistake, the mistake must be mutual and common to both parties to the instrument. *Stevenson v Aalto,* 333 Mich 582, 589; 53 NW2d 382 (1952). If the asserted mutual mistake is with respect to an extrinsic fact, reformation is not allowed, even though the fact is one which would have caused the parties to make a different contract, because courts cannot make a new contract for the parties. *Brenner, supra,* p 724; *Marshall v Marshall,* 135 Mich App 702, 710-711, n 3; 355 NW2d 661 (1984).

In this case, there was no mistake as to the instrument actually entered into. The mutual mistake is not of an intrinsic fact. The land contract reflects the agreement of the parties and, thus, is incapable of reformation.

Finally, plaintiffs argue that summary judgment should not have been granted prior to the close of discovery. It is well established that summary judgment is premature if it is granted before

[5] The land contract contained the following provision:

(m) Purchaser accepts the property as is, and with knowledge that Seller has been informed by District Health Department No. 3 that the soil character is such that any applications to install an on-site sewage disposal system will be denied.

discovery on the disputed issues is complete. *Kortas v Thunderbowl & Lounge,* 120 Mich App 84, 87; 327 NW2d 401 (1982). From our careful review of the record, we conclude that there were no material issues of fact to be resolved, and therefore, summary judgment was not prematurely granted.

Affirmed.