*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HUBERT MARSHALL, JR.,

      Plaintiff/Counterdefendant-Appellee,

v

WILLIAM CAMPBELL, JR.,

      Defendant-Appellant,

and

MACILL INTERNATIONAL, INC.,

      Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
August 18, 2022

No. 356634
Wayne Circuit Court
LC No. 19-005765-CH

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendants, William Campbell, Jr. and Macill International, Inc. (Macill), appeal as of right the order of the trial court quieting the title of plaintiff, Hubert Marshall, Jr., in certain real property and reforming the land contract between the parties. We reverse and remand.

## I. FACTS

This case is a dispute involving the sale of commercial real property located at 8745-8755 Grand River Avenue in Detroit, which includes a bar. Campbell purchased the real property from Ben Dickerson, Annie Dickerson, and Eugene Frazier in 2006. Campbell did not purchase the previous owners' class C liquor license, however, because his criminal record prevented him from qualifying for the license. Instead, he orally agreed with Ben Dickerson and Eugene Frazier that they would continue to renew the license, issued to Ben & Eugene's Place, LLC, but would allow Campbell, or others designated by Campbell, to use the liquor license to operate the bar. According to Campbell, Dickerson and Frazier also orally agreed that they would transfer the license to a new owner at Campbell's request.

-1-

On November 12, 2015, Marshall and Campbell entered into an agreement by which Marshall agreed to purchase the real property from Campbell. The agreement provides under the heading "Description of Premises," that the seller agrees to convey together with the real property:

[A]ll tenements, hereditaments, improvements, and appurtenances, including any lighting and plumbing fixtures, shades, Venetian blinds, curtain rods, storm windows, storm doors, screens, awnings, **liquor license**, restaurant license, Berg System (liquor pouring apparatus), now on the land . . . . [Emphasis added.]

In the next paragraph, under the heading "Terms of Payment," the agreement provides that in addition to purchasing the real property, Marshall also had an option to purchase a liquor license and other items from Campbell for an additional $30,000. The agreement provides, in relevant part:

That the full consideration for the sale of the land to Purchaser is: Three Hundred Thousand Dollars and 00/00 ($300,000) dollars (the "Purchase Price"). Buyer shall pay $30,000 upon the exercise of this Option to Purchase, which consist[s] of the following: interest payment, berg system, **liquor license** and restaurant license. The $30,000 does not apply to the cost of the business ($300,000). [Emphasis added.]

The contract thereafter provides:

For the period of the Term, the Seller (William Campbell Jr.) shall land contract the property to Hubert Marshall Jr. (as referred to in [sic] herein ("Purchaser") on the terms and conditions set out in the following subsections and unless Hubert Marshall Jr. exercise the Option during the seventy-eight (78) months of the Term, the Seller shall be bound to the land contract of the Property for the entire duration of the Term:

Following that provision, under the heading "L/C Payment," the contract provides:

The land contract payments for the Term shall be three hundred thousand Dollars and 00/100 ($300,000.00), payable by Hubert Marshall Jr. by cashier's check or money order in equal and consecutive monthly installments of three thousand seven hundred ten Dollars and 00/100 ($3,710.00) (the "Land contract installments"), the first (5th) day of each month during the Term. . . . Land contract payment will commence on Friday, January 5, 2016.

To summarize, the agreement provides that the purchase price of the real property is $300,000, with the payments to be made in monthly installments for a term of 78 months at $3,710 per month. The agreement does not specify when the additional amount is due (78 payments of $3,710 equals $289,380). The agreement also provides that plaintiff could exercise an "Option to Purchase" for an additional $30,000, which "consists of" the liquor license, restaurant license, berg system, and "interest payment." The agreement does not specify the interest rate of the contract.

The parties do not dispute that upon entering into the agreement, Marshall paid Campbell $30,000, and Campbell gave Marshall possession of the real property, which included a liquor

-2-

license issued to Ben & Eugene's Place, LLC. The parties also do not dispute that thereafter Marshall paid Campbell 15 monthly payments of $3,710, totaling $55,650 in monthly payments. According to Marshall, after entering into the agreement he invested $25,000 in repairing the building. He opened the bar in April 2016 and operated it until March 2017, under the liquor license that had been issued to Ben & Eugene's Place, LLC, which he displayed in the bar. Campbell testified that in 2016, he delivered to Marshall a copy of the renewed liquor license in the name of Ben & Eugene's Place, LLC. Marshall testified that in 2016, the bar grossed profits of $3000 per month and in 2017 began to gross profits of $15,000 per month.

In early 2017, Eugene Frazier died,[1] and his heirs did not renew the liquor license issued to Ben & Eugene's Place, LLC, which was scheduled to expire on April 30, 2017. In March 2017, the Michigan Liquor Control Commission (LCC) terminated the liquor license and notified Marshall that he was operating the bar without a liquor license. Marshall testified that in March 2017, he attended a hearing before the LCC and learned that his agreement with Campbell was insufficient to convey to him a liquor license because transfer of a liquor license requires approval by the LCC. Marshall testified that despite learning this information from the LCC, he and Campbell nonetheless then agreed that Campbell would obtain a liquor license and convey it to Marshall. Marshall testified that because he, too, had a criminal record, he was not sure whether he would qualify for a liquor license, so he and Campbell agreed that Campbell would obtain a liquor license and transfer it to Marshall's designee. He further testified that he and Campbell agreed that he did not have to make the monthly payments on the bar until Campbell obtained a liquor license to convey to Marshall's designee.

During the next two years, Marshall did not make payments to Campbell and Campbell did not obtain a liquor license for the bar. In January 2019, Campbell quitclaimed his interest in the real property to Macill, a corporation solely owed by Campbell, thereby effectively transferring his interest in the land contract to Macill. Macill then initiated eviction proceedings against Marshall.

Marshall filed the complaint initiating this action, seeking to quiet his title to the real property and seeking to reform the land contract on the basis of alleged fraud by Campbell. Marshall requested that the trial court order that the amount due on the land contract was $35,000, and also award him additional damages of $500,000. Macill filed a counterclaim against Marshall to enforce the land contract pursuant to an acceleration clause in the contract in light of Marshall's nonpayment of the contract.

At trial, Campbell testified that before entering into the land contract, he discussed with Marshall that the liquor license was held by a third party, but that Marshall could operate the bar using the existing license issued to Ben & Eugene's Place, LLC. He testified that Marshall agreed to the arrangement. Campbell further testified that Marshall explained that he could not obtain a liquor license himself because he (Marshall) also has a criminal record. According to Campbell, he and Marshall agreed that Campbell would direct the previous owners to convey the liquor

---

[1] Ben Dickerson predeceased Frazier.

license to whomever Marshall designated, but that Marshall never identified a designee for the liquor license.

By contrast, Marshall testified that Campbell told him that he owned the liquor license. Marshall testified that he understood the contract to require Campbell to convey the liquor license to Marshall upon the final payment of the land contract. Marshall testified that one of his main objectives in purchasing the bar from Campbell was to obtain the liquor license; he owned two additional properties near the bar and had encountered legal problems with serving alcohol at those locations because he lacked a liquor license. He was concerned that his criminal record might preclude him from obtaining a liquor license and therefore planned to have Campbell convey the liquor license to Marshall's fiancée.

At the conclusion of the bench trial on the parties' claims, the trial court found that Campbell committed fraud by representing to Marshall that he was selling to Marshall a liquor license that Campbell knew he did not own. The trial court found that Marshall was entitled to payment from Campbell of $126,800, which represented $25,000 that plaintiff expended to improve the bar, $85,000 in payments on the land contract, and $16,800 spent maintaining the property while waiting for Campbell to obtain a new liquor license. The trial court also awarded Marshall reasonable attorney fees in prosecuting this action and defending the eviction lawsuit.

The trial court also found that Marshall was entitled to quiet title of the property. The trial court found that evidence presented at trial established the current fair market value of the real property at $110,000. The trial court concluded that because Campbell could not produce a liquor license, the contract was one for purchase of the real property only and that Marshall had paid in excess of $126,000 to Campbell on the contract. The trial court therefore concluded that Marshall had completed the purchase of the real estate and was entitled to quiet title. The trial court entered a final order reforming the parties' contract and quieting Marshall's title to the real property.

Defendants filed a motion in the trial court to reopen the case and amend the trial court's judgment. After a hearing, the trial court amended its judgment, adding the finding that Marshall owed $214,350 to Macill on the land contract and amending its conclusions of law to order Macill to immediately execute and deliver to Marshall a quitclaim deed without the obligation of Marshall to pay the $214,350 owed on the land contract. The trial court set aside its previous finding that Marshall was entitled to a money judgment of $126,800, concluding that quiet title in the real property compensated Marshall for that amount, for attorney fees in the amount of $8,287.50, taxable costs of $2,155.50, and for any lost profits as the result of Campbell's fraud. Defendants now appeal.

## II. DISCUSSION

Defendants contend that the trial court erred by ordering Macill to quitclaim its interest in the real property to Marshall and also erred by reforming the land contract and determining that Marshall had paid all amounts owed. We agree that the trial court erred by granting the equitable relief.

## A. STANDARD OF REVIEW

Whether equitable relief is properly granted under the facts found by the trial court is a question of law that we review de novo. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). Specifically, we review de novo the trial court's decision in an action to quiet title, *Fed Home Loan Mtg Corp v Werme*, 335 Mich App 461, 467; 966 NW2d 729 (2021), and the trial court's decision to grant or deny the equitable relief of reformation of a contract. *Olsen v Porter*, 213 Mich App 25, 28; 539 NW2d 523 (1995). In addition, whether a contract exists is a question of law that this Court reviews de novo. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). We review the trial court's factual findings following a bench trial for clear error. *Ladd v Motor City Plastics Co*, 303 Mich App 83, 92; 842 NW2d 388 (2013).

## B. BREACH OF CONTRACT

Defendants first argue that the trial court erred by finding that the defense of impossibility of performance was not a valid defense to plaintiff's claim that Campbell breached the land contract. We observe initially that Marshall's complaint did not specifically allege breach of contract. Before the trial court, however, perhaps in response to defendants' counterclaim, Marshall argued that Campbell breached the parties' contract by failing to convey a liquor license to him. Defendants contended that any breach was excused by the defense of impossibility of performance; defendants argued that it was impossible to convey a liquor license to Marshall because the LCC was unlikely to approve a transfer of a liquor license to Marshall in light of his criminal record. The trial court rejected defendants' defense of impossibility of performance. Given our de novo review of the question presented, we first consider whether a valid contract existed between the parties before considering whether defendants breached that contract and whether defendants raised a valid defense to a claim of breach.

A claim of breach of contract requires the plaintiff to demonstrate that a valid contract existed. *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). To set forth a prima facie case of breach of contract, the party asserting the breach must show by a preponderance of the evidence that (1) a contract existed, (2) the other party breached the contract, and (3) the party asserting the breach incurred damages as a result of the breach. *Id*.

To form a contract, there must be mutual assent, meaning that the parties must have a meeting of the minds on all the essential terms of the agreement. *Huntington Nat'l Bank v Daniel J. Aronoff Living Trust*, 305 Mich App 496, 508; 853 NW2d 481 (2014). A valid contract must include parties competent to contract, proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation. *Bank of America*, 499 Mich at 101. In addition, a valid contract for the sale of land must contain certain elements. *Zurcher v Herveat*, 238 Mich App 267, 282; 605 NW2d 329 (1999). The contract "must generally be in writing and must set forth the terms of the agreement with sufficient certainty and definiteness, specifying the identities of the parties and their mutual assent, the property which is the subject of the contract, the price of such property, and the consideration." *Id*.

A land contract is a specific type of contract; it is an executory contract in which equitable title passes to the buyer at the time of the agreement while legal title remains with the seller until

the buyer performs all the obligations of the contract. *Id*. at 291. It is therefore crucial to the formation of a valid land contract that the agreement is "definite as to parties, property, consideration, terms[,] and time of performance." *Rathbun v Herche*, 323 Mich 160, 165; 35 NW2d 230 (1948) (quotation marks and citation omitted). Essential elements to a land contract include the amount of the installment payments, the time of the installment payments, and the rate of interest. *Zurcher*, 238 Mich App at 291. Without these essential elements it would be impossible for a reading of the contract to reveal when the purchaser had completed the terms of the contract and thereby gained legal title to the property.

In this case, a reading of the agreement between Marshall and Campbell does not reveal what Marshall was required to do to complete his obligations under the agreement and thereby gain legal title to the property. The agreement requires Marshall to pay $3,710 per month for 78 months, which totals $289,380. The agreement also requires Marshall to pay $300,000. The agreement does not specify how and when the additional amount is due. The agreement also does not specify the interest rate of the agreement. The agreement also provides that Marshall could exercise an "Option to Purchase" for an additional $30,000, which "consists of" the liquor license, restaurant license, berg system, and "interest payment." The agreement thus fails to identify the interest rate, how the purchaser is to complete the payment, and in what amount. Because the essential elements of a land contract are not present in this case, see *Zurcher*, 238 Mich App at 291, the agreement between the parties in this case was not a valid land contract. By failing to establish a valid contract between the parties, Marshall failed to demonstrate the elements of breach of contract. See *Bank of America, NA*, 499 Mich at 100.

## C. IMPOSSIBILITY OF PERFORMANCE

Our determination that the parties' agreement is not a valid land contract is dispositive of defendants' issue on appeal that they raised a valid defense to the assertion that they breached the land contract. For the sake of clarity, however, we briefly address defendants' argument.

Before the trial court, defendants raised the defense of impossibility of performance to the assertion that they had breached the land contract, arguing that Marshall's criminal record precluded Campbell from transferring a liquor license to Marshall. At trial, defendants presented witnesses who testified that it was highly unlikely that the LCC would issue a liquor license to Marshall in light of his criminal record. The witnesses also testified that sometimes individuals resolve this problem by having a "straw man" obtain the liquor license while the bar actually is operated by a person who does not hold the license, but that the LCC was reluctant to issue a liquor license to a person who is not legitimately the owner of the bar. The trial court found that impossibility was not a valid defense to Marshall's allegation that Campbell breached the land contract because it was possible that the LCC would issue a liquor license to Marshall or his designee, though not likely. We agree that impossibility of performance is not a valid defense to breach of contract in this case, but we disagree with the trial court's reasoning.

The defense of impossibility of performance excuses a party to a contract from liability for breach "in the event his or her contractual promise becomes objectively impossible to perform." *Roberts v Famers Ins Exch*, 275 Mich App 58, 73; 737 NW2d 332 (2007). Impossibility may be present at the inception of the contract or arise thereafter. *Id*. at 74. In either scenario, to demonstrate impossibility as a valid defense, it is not necessary to demonstrate absolute

impossibility, but there must be a showing of "impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved." *Id.* (Quotation marks and citation omitted).

In this case, both Campbell and Marshall testified that Campbell agreed to convey a liquor license to Marshall.[2] The parties did not agree, however, that Campbell would obtain LCC approval for the transfer of the license; neither party contends that Campbell had it within his power to ensure the future actions of the LCC. Rather, the performance required of Campbell was to convey a liquor license to Marshall. Campbell failed to do so, not because Marshall was ineligible to hold the license, but because Campbell did not have a liquor license to convey to anyone. If, for example, Campbell owned a liquor license and was standing ready to convey it to Marshall but could not complete the transfer because Marshall could not obtain LCC approval, Campbell might be entitled to raise the defense that it was impossible for him to perform on the contract due to the barrier of Marshall's inability to obtain LCC approval. Under the facts of this case, however, it was indeed impossible for defendants to convey a liquor license to Marshall, but only because Campbell did not own a liquor license. These facts do not support a valid defense of impossibility of performance, just as an agreement to sell the Mackinac Bridge could not be defended on the basis of impossibility because the "seller" did not own the bridge.

## D. EQUITABLE REMEDIES

Defendants also challenge on appeal the equitable remedies of quiet title and reformation of the parties' contract ordered by the trial court. We agree that the record in this case does not support the award of the equitable remedies.

A court sitting in equity has "broad and flexible jurisdiction . . . to afford remedial relief, where justice and good conscience so dictate," and when no adequate remedy exists at law. *Tkachik v Mandeville*, 487 Mich 38, 45-46; 790 NW2d 260 (2010) (quotation marks and citation omitted). Michigan courts have equitable authority to reform an instrument that does not express the parties' true intent because of fraud, mistake, accident, or surprise. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371-372; 761 NW2d 353 (2008). Courts will reform a contract to reflect the parties' actual intent when there is a mutual mistake of the parties, or mistake on one side and fraud on the other, and as a result the contract does not express the actual intent of the parties. *Olsen*, 213 Mich App at 29; see also *Ross v Damm*, 271 Mich 474, 480-481; 260 NW 750 (1935).

The party seeking reformation has the burden to prove by clear and convincing evidence that the contract should be reformed to carry out the parties' true agreement. *Dingeman v Reffitt*, 152 Mich App 350, 358; 393 NW2d 632 (1986). Evidence is considered to be clear and convincing when it "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise

---

[2] Agreements to assign a liquor license have been recognized as valid and enforceable. See, e.g. *Brown v Yousif*, 445 Mich 222; 517 NW2d 727 (1994). However, such transfers are subject to the approval of the LCC. See MCL 436.1501(2).

facts in issue." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted).

In this case, the facts do not establish that the parties entered into an otherwise valid land contract that required reformation to carry out the parties' true agreement because it was arrived at by mutual mistake or fraud. Rather, the parties' agreement in this case lacks the terms essential to a valid land contract, such as the interest rate and when the obligation of the purchaser was to be completed. Irrespective of whether the parties arrived at their agreement based on fraud or mutual mistake, the parties' agreement does not establish a valid land contract, and courts cannot make a contract for the parties where one does not exist. *E R Brenner Co v Brooker Engineering Co*, 301 Mich 719, 724; 4 NW2d 71 (1942); *Dingeman*, 152 Mich App at 358. We therefore conclude that the trial court erred by reforming the contract.

The trial court also granted Marshall the equitable relief of quiet title, finding that Campbell's fraud at the inception of the agreement and Marshall's partial performance of the agreement warranted Marshall receiving legal title to the real property without further payment. In an action to quiet title, the burden initially is on the plaintiff to establish a prima facie case of title. *Special Prop VI v Woodruff*, 273 Mich App 586, 590; 730 NW2d 753 (2007). To successfully state a claim for quiet title, the plaintiff must show that he or she acquired and now possesses a legal or equitable interest in the property in question. See *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999). If the plaintiff establishes a prima facie case of title to the property, the burden shifts to the defendant to prove a superior right or title. *Elizabeth Trace Condo Assoc v American Global Enterprises, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355243); slip op at 2.

As discussed, equitable title passes to a land contract purchaser at the time of the agreement, but legal title remains with the seller until the purchaser performs all the obligations of the contract. *Zurcher*, 238 Mich App at 291. Here, because the parties' agreement is not a valid land contract, Marshall did not acquire an equitable interest in the property by way of the agreement. Marshall therefore did not successfully state a claim for quiet title because he did not demonstrate that he acquired and now possesses a legal or equitable interest in the property. See *Beulah Hoagland Appleton*, 236 Mich App at 550. We therefore conclude that the trial court erred by ordering the remedy of quiet title to the property.

However, we observe that the lack of a valid land contract between the parties does not mean that Marshall is without a remedy. The trial court found that Campbell defrauded Marshall by purporting to sell him a liquor license that Campbell did not own, and defendants do not challenge that finding on appeal. Rather, defendants dispute the amount of the award intended to compensate Marshall for the fraud. We therefore remand to the trial court for a determination of the damages, if any, incurred by Marshall as a result of Campbell's fraud.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh