BARNES v B & V CONSTRUCTION, INC

Docket No. 66431. Submitted January 11, 1984, at Detroit.—Decided
September 18, 1984. Leave to appeal applied for.

Albert H. and Shirley B. Barnes entered into a contract with B &
V Construction, Inc., whereby B & V would mine and remove
gravel from the Barnes' property and fill and grade the area as
well as other marshy ground on the property. The contract
called for the removal of all of the aggregate materials on the
property within one year from the date of the agreement.
Filling and mass grading was to be completed within two years
from the date of the agreement. B & V began mining and
continued to do so for approximately four months, removing
what the Barneses estimated to be one-half of the gravel on
their property. The Barneses were informed by B & V that B &
V had no intention of doing any more work on the property.
Approximately 18 months after the contract was signed, the
Barneses filed suit against B & V in Oakland Circuit Court for
breach of contract. Defendant filed a motion to strike plaintiffs'
claim for damages, arguing that the filing of the lawsuit prior
to the expiration of the two-year period for filling and grading
the property made it impossible to fill the excavation, remove
the marshy ground and mass grade the area. Defendant also
moved for a directed verdict and, on the last day of trial, for a
mistrial. The motions were denied, John N. O'Brien, J. The
jury returned a verdict in favor of plaintiffs in an amount of
$153,200, plus interest and attorney fees. Judgment was en-
tered, and defendant appeals. *Held:*

1. The trial court did not err in ruling that whether or not
plaintiffs had made it impossible to complete the contract was a
question of fact to be decided by the jury.

2. The trial court did not err in denying defendant's motion
for mistrial, which was based on the alleged deliberate inser-
tion by plaintiffs' attorney of inflammatory remarks against

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contracts §§ 404 *et seq.*, 425.
Modern status of the rules regarding impossibility of performance
as defense in action for breach of contract. 84 ALR2d 12.
[2] 5 Am Jur 2d, Appeal and Error § 624 *et seq.*

defendant during closing argument. The trial court was correct in concluding that some of the remarks were not prejudicial to defendant. Other remarks, though prejudicial, could have been corrected by a jury instruction, but defendant failed to object or request an instruction when the statements were made.

Affirmed.

1. CONTRACTS — BREACH OF CONTRACT — IMPOSSIBILITY OF PERFORMANCE — QUESTION OF FACT.

It was not error for a trial court to treat an issue of impossibility of performance of a contract as one of fact for the jury to resolve where there was conflicting evidence as to why the defendant had failed to fulfill its obligations under the terms of the contract.

2. APPEAL — IMPROPER CONDUCT OF ATTORNEY.

An appellate court, when reviewing an appeal asserting improper conduct of an attorney, should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless; if the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial.

*Kenneth M. Davies,* for plaintiffs.

*Solner, Solner & Solner, P.C.* (by *Kathleen A. Solner*), for defendant.

Before: WAHLS, P.J., and R. M. MAHER and C. W. SIMON, JR.,* JJ.

PER CURIAM. Defendant appeals as of right from an order denying defendant's motion for a mistrial and from the trial court's denial of defendant's motions to strike plaintiff's claim for damages and for a directed verdict.

Plaintiffs, the owners of several acres of property in Livonia, contracted with defendant to have defendant mine and remove gravel from the property, and to fill and grade that area as well as other marshy ground on plaintiffs' property. The

---

* Circuit judge, sitting on the Court of Appeals by assignment.

contract, signed by plaintiffs and defendant's agent on June 9, 1976, called for defendant to mine and purchase from plaintiffs "all of the aggregate materials contained on the owners' property in accordance with the attached Exhibit 'B' " and specified "that removal shall be made within a period of one (1) year from the date of the agreement". The contract also made defendant responsible for obtaining any necessary permits and for filling and grading the property once mining was completed. Paragraph 9 of the contract provided:

> "Contractor agrees to remove the muck and other dirt from the area described in the attached Exhibit 'B' which is noted as 'marshy ground' and shall cause said area to be filled with hard, clean fill and shall further cause the area to be mass graded together with the balance of the property upon the conclusion of the mining and it is specifically understood that all the filling and mass grading shall be accomplished within a period of 2 years from this date."

No "Exhibit B" was produced at trial.

Defendant began mining gravel from plaintiffs' property in July 1976 and continued to do so until November 1976. At the time defendant stopped mining, plaintiffs estimated that approximately one-half of the gravel on their property remained in the ground. The excavation had not been filled nor the area mass graded by the time of trial.

Plaintiffs sued defendant for breach of contract. This suit was commenced prior to the two-year deadline contractually provided for completing the filling and mass grading. Plaintiffs argued that they were justified in suing in anticipatory breach and sought a total of approximately $400,000 in damages for defendant's alleged failure to remove the muck from the marshy area, fill in the marshy

area, fill in the excavated gravel pit, and mass grade the entire property. At the conclusion of the trial, the jury returned a verdict of $153,200 for plaintiffs.

On appeal, defendant first argues that the trial court should have ruled as a matter of law that plaintiffs, by filing their lawsuit six months prior to the fixed date for complete performance, made it impossible for defendant to perform certain contractual promises. The trial court had ruled that whether or not plaintiffs had made it impossible to complete the contract was a question of fact.

In analyzing this issue, we note that defendant does not appear to dispute plaintiffs' right to sue for anticipatory breach of part of the contract, because defendant is not arguing that it did not first breach the contract by failing to remove "all" the gravel on the property, as required by the contract. Defendant's claim is instead that subsequent "breaches" of the contract were not breaches at all, but rather were failures to perform caused solely by plaintiffs' rendering it impossible for defendant to perform its obligations.

We do not agree with defendant that the trial court erred by treating the issue of impossibility as one of fact for the jury to resolve. There was conflicting evidence as to why defendant ceased operations in November, 1976, and there was evidence that Dick Thomas, defendant's head engineer, told plaintiff Albert Barnes on July 14, 1977, "that [defendant] had no intentions of coming back to do any work". In addition, the only evidence that plaintiffs themselves prevented defendant from filling the pit came from Roger Calo of JJJ Trucking, who was hired by defendant to fill the pit. Calo testified that "at one point Mr. and Mrs. Barnes came out on the property and saw us

approaching their property line * * * they showed some concern to my partner and myself as to what we were doing". Calo testified that he then asked his attorney, Mr. Charest (also plaintiffs' attorney), if he should fill the hole and was told not to because of the litigation. Calo provided no explanation for the fact that he got the contract to fill the hole in June, 1977, but did not attempt performance until after January, 1978, after plaintiffs had filed their lawsuit. Other evidence on the issue of plaintiffs' "interference" was testimony by two of defendant's witnesses that they would have been willing to fill plaintiffs' property in 1977, but were told about the lawsuit by a neighbor of plaintiffs; they therefore chose not to get involved. This evidence did not require the court to rule, as a matter of law, that plaintiffs rendered it impossible for defendant to perform its contractual obligations.

Defendant next argues that the trial court erred by denying defendant's motion for mistrial based on plaintiffs' counsel's deliberate insertion of inflammatory remarks against defendant into the trial during closing argument. We analyze this issue in light of the Supreme Court's recent opinion in *Reetz v Kinsman Marine Transit Co,* 416 Mich 97; 330 NW2d 638 (1982):

"When reviewing an appeal asserting improper conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial." 416 Mich 102-103. (Footnotes omitted.)

Defendant objects to three categories of remarks

made by plaintiffs' counsel. The first category was composed of reference to plaintiffs' difficulty in securing witnesses who were not afraid to testify against defendant. Coupled with these remarks were statements that the construction business was a fraternity and that business was done on a "handshake". The trial court concluded that these remarks were not prejudicial to defendant in context:

> "When taken in context, the statements merely suggest that defendant's position as a member of the construction industry make performance of the terms of the contract less [costly] for the defendant than for the plaintiffs. The suggestions of ethnic aspersions, physical jeopardy to witnesses testifying against defendant or allusions to a 'big company versus the little man' theme are unfounded and based purely on the view of defendant."

After reviewing the record, we agree with the trial court. Most of the "comments" on defendant's witnesses were, in essence, single questions asked by plaintiffs' attorney during cross-examination of those witnesses. Such questions constituted permissible attempts to discover bias on the part of the witnesses, and counsel did not continue the questions once he received a negative response from the witnesses. This aspect of the questioning is therefore distinguishable from the improper comments made by counsel in *Wayne County Bd of Road Comm'rs v GLS LeasCo,* 394 Mich 126; 229 NW2d 797 (1975). In addition, many of the remaining comments came in the context of damages and were permissible argument based upon the conflicting estimates of the cost to plaintiffs to fill the pit. Other alleged references to Italians and ethnic groups simply did not occur in front of the jury.

However, several of counsel's remarks during closing argument were not based upon evidence on the record and were thus improper. We find, however, that an instruction to the jury would have cured the prejudice from these remarks and therefore decline to reverse in light of defendant's failure to object or request an instruction at the time the statements were made. *Reetz, supra,* 416 Mich 105.

The next category of comments to which defendant objects is composed of comments throughout the trial as well as in closing argument about plaintiffs' impending trial on criminal charges stemming from their failure to have the pit filled. These remarks were based upon facts in evidence as plaintiffs had introduced a witness to testify about the criminal charges brought against both defendant and plaintiffs. In addition, even if the remarks did evoke sympathy for the plaintiffs (and we are not convinced that they did in fact do so given the evidence presented at trial by defendant), an instruction to the jury not to allow sympathy to influence their decision would have cured this prejudice. Defendant did object to the first reference to the pending charges, but did not request such an instruction. We therefore decline to reverse on this issue as well.

The final category of allegedly improper remarks is composed of comments by plaintiffs' counsel which referred to defendant as a major construction contractor which intended to "rip off" plaintiffs. Defendant correctly notes that attempts to evoke sympathy for individual plaintiffs by portraying a defendant as a large, unfeeling corporation can and have led to reversal of a verdict for plaintiffs in the past. See *Reetz, supra,* and cases cited therein. However, after reading the record, we are not persuaded that defendant in this case

was irreparably prejudiced by the allegedly improper comments. Many of the comments mentioned by defendant were innocuous and did not depict defendant as a large, unfeeling corporation. As stated by the trial court, the "improper" nature of these comments is based "purely on the view of defendant". We do find, however, that the statement that defendant "intended to rip off" plaintiffs was improper. This statement was accompanied to some extent by the suggestion that defendant, a large corporation, had intended all along to take advantage of the plaintiffs, who were naive, somewhat helpless individuals. However, we again conclude that the prejudice from these comments was not so strong as to become incurable. In *Reetz,* reversal was required because the plaintiff's attorney made repeated, highly offensive, and irrelevant comments which portrayed the corporate defendant as an unfeeling, powerful corporation controlled by a ruthless (and extremely unpopular) millionaire. Here, the reference to the corporation simply was not this pointed or offensive. The improper motive of the defendant was imputed to the individuals who ran the business, not to the corporation as an entity, and even these comments fell far short of the deliberate, personalized, and irrelevant attacks made upon George Steinbrenner III during the *Reetz* trial. We are not persuaded that the jurors were misled and diverted from their attention to the matters in issue.

Affirmed.