ROBERTS v FARMERS INSURANCE EXCHANGE

Docket No. 270406. Submitted December 4, 2006, at Lansing. Decided
    March 27, 2007, at 9:10 a.m.

Regina Roberts, as next friend for her minor daughter, Brittany
    Underwood, brought an action in the Kent Circuit Court against
    Farmers Insurance Exchange, seeking personal protection insurance
    benefits under a no-fault automobile insurance policy for head
    injuries Underwood allegedly sustained in an automobile accident.
    Farmers suspended Underwood's benefits after she repeatedly failed
    to appear for medical examinations that Farmers scheduled to
    determine the extent of her injuries, and filed a third-party complaint
    alleging breach of contract against Roberts individually for failing to
    bring Underwood to the examinations and causing Farmers to incur
    a $1,000 cancellation fee imposed by a doctor. Roberts filed a motion
    for declaratory relief, summary disposition, and sanctions, arguing
    that Farmers wrongfully suspended Underwood's no-fault benefits.
    The trial court, Donald A. Johnston, J., granted summary disposition
    in favor of Roberts and awarded her attorney fees, and ruled in
    Farmers' favor on its third-party claim, ordering Roberts to reim-
    burse Farmers for the cancellation fee. Both parties appealed as of
    right.

The Court of Appeals *held*:

1. The trial court clearly erred by awarding Roberts attorney fees
because there is no evidence that benefits were overdue when the suit
was filed and because Farmers' suspension of benefits was reasonable
in light of Underwood's breach of her statutory duty to submit to
examinations and the factual uncertainty regarding Underwood's
brain injury claims.

2. The trial court did not err by ordering Roberts to reimburse
Farmers for the cancellation fee because there is no indication that
it would have been impossible, or even extremely difficult, for
Underwood to attend her scheduled examinations.

Affirmed in part, reversed in part, and remanded.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — MEDICAL EXAMI-
    NATIONS — BREACH OF DUTY.

Where a person seeking personal protection insurance benefits under a

no-fault automobile insurance policy repeatedly breaches the statutory duty to submit to an independent medical examination, an insurer may properly suspend benefits until the examination has been completed (MCL 500.3151).

*William W. Decker, Jr., LLC* (by *William W. Decker, Jr.*), for Regina Roberts.

*Worsfold Macfarlane McDonald, P.L.L.C.* (by *David M. Pierangeli*), for Farmers Insurance Exchange.

Before: MARKEY, P.J., and SAAD and WILDER, JJ.

PER CURIAM. Defendant/third-party plaintiff-appellant/cross-appellee Farmers Insurance Exchange (Farmers) appeals as of right an order granting summary disposition in this action and awarding attorney fees for unreasonable denial of first-party no-fault insurance benefits. Third-party defendant-cross-appellant Regina Roberts, individually, cross-appeals the same order. On appeal, Farmers argues that the circuit court erred in determining that it unreasonably denied benefits and therefore owed attorney fees. On cross-appeal, Roberts argues that the trial court erred in requiring her to pay a cancellation fee because she was hospitalized at the time of the missed doctor's appointment. We reverse the trial court's award of sanctions against Farmers, and on the cross-appeal, affirm the trial court's determination of Roberts's liability for the $1,000 cancellation fee.

I

On December 11, 2002, when Brittany Underwood was 12 years old, she and her mother, Roberts, were involved in an automobile accident. Roberts alleged that Underwood's "injuries resulted in a closed head injury and other physically debilitating injuries." Farm-

ers acknowledges that "[a]t the time of the automobile accident, [Underwood] was an insured under a no-fault automobile policy issued to her mother, Regina Roberts."

In April 2003, Underwood was examined by Dr. Jacobus Donders of Mary Free Bed Hospital. Dr. Donders noted that Underwood reported "[r]ight frontal headaches that radiate to the neck and shoulders; apparently pressure-tension type." In December 2003, Underwood twice failed to appear at Mary Free Bed Hospital for counseling.

In 2004, Underwood repeatedly failed to attend the physical and neuropsychological independent medical examinations (IMEs) Farmers sought and scheduled. On January 8, 2004, a physical IME of Underwood was scheduled for January 26, 2004. On January 19, 2004, Farmers scheduled a neuropsychological IME for January 28, 2004, in Grand Rapids. According to Farmers, Roberts cancelled the neuropsychological IME on January 22, 2004. On January 22, 2004, the psychological IME was rescheduled for February 27, 2004, with Robert Fabiano, Ph.D., in Grand Rapids.

On January 26, 2004, Roberts called to cancel Underwood's physical IME and rescheduled it for February 9, 2004. Roberts then cancelled the February 9, 2004, appointment.

On February 9, 2004, the psychological examination was rescheduled for March 17, 2004. Also on February 9, 2004, the physical IME was rescheduled for February 19, 2004, with Dr. Olejniczak in Grand Rapids. Roberts and Underwood attended the February 19, 2004, physical IME.

Underwood failed to appear for either the February 27, 2004, neuropsychological examination or the March 17, 2004, neuropsychological examination. On

March 25, 2004, the neuropsychological examination was rescheduled for April 23, 2004, with Dr. Fabiano. On April 22, 2004, the day before the neuropsychological examination, Roberts cancelled the appointment. Farmers was assessed a $250 late cancellation fee.

On April 27, 2004, Farmers rescheduled Dr. Fabiano's examination for May 21, 2004. Dr. Fabiano indicated that if the patient again failed to appear or cancelled after May 14, 2004, he would assess a no-show/cancellation charge of $1,000. Accordingly, Farmers sent Underwood a letter in care of Roberts indicating: "If you fail to attend this appointment, or you cancel this appointment after 5/14/04, you will be responsible for any and all no-show/cancellation fees incurred by you at a rate of $1,000.00." Underwood broke the May 21, 2004, appointment, so Dr. Fabiano charged Farmers the $1,000 fee.

As a result of the foregoing events, effective May 21, 2004, Farmers cancelled Underwood's first-party no-fault benefits. In a letter dated July 13, 2004, plaintiff's counsel requested that Farmers reinstate benefits. In a letter dated July 21, 2004, Farmers responded that it would reschedule the IME on receipt of the $1,000 for the no-show/cancellation fee incurred as a result of Underwood's failure to attend the IME, stating, "[u]ntil such time, our discontinuation of benefits, effective May 21, 2004, stands firm."

On August 20, 2004, Roberts, as next friend of Underwood, filed a complaint asserting that Farmers "has refused or is expected to refuse to pay Plaintiff all personal protection benefits in accordance with the applicable no-fault and contract provisions." Plaintiff further alleged that Farmers "has unreasonably refused to pay or has

unreasonably delayed making proper payments to Plaintiff contrary to MCL 500.3142 and MCLA 500.3148 . . . ."[1]

---

[1] MCL 500.3142 provides:

(1) Personal protection insurance benefits are payable as loss accrues.

(2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.

(3) An overdue payment bears simple interest at the rate of 12% per annum.

MCL 500.3148 provides:

(1) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

(2) An insurer may be allowed by a court an award of a reasonable sum against a claimant as an attorney's fee for the insurer's attorney in defense against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation. To the extent that personal or property protection insurance benefits are then due or thereafter come due to the claimant because of loss resulting from the injury on which the claim is based, such a fee may be treated as an offset against such benefits; also, judgment may be entered against the claimant for any amount of a fee awarded against him and not offset in this way or otherwise paid.

On August 25, 2004,[2] Farmers reaffirmed its discontinuation of benefits for Underwood, stating: "To date, we have not received payment for the no-show/cancellation fee. At this time we are closing our file. If we receive the requested payment in the future, we will reschedule the Independent Medical Evaluation and reconsider the claim at that time."

On October 19, 2004, Farmers filed a third-party complaint against Roberts individually, asserting one count for breach of contract. Farmers alleged that under the terms of the automobile insurance policy and the no-fault act, MCL 500.3151,[3] Roberts "became obligated to submit minor plaintiff Brittany Underwood to mental or physical examinations by physicians," and that as a result of Roberts's failure to produce Underwood for an IME, Farmers "has incurred $1,000 in no show fees."

On January 26, 2005, Roberts filed a motion for declaratory relief, summary disposition, and sanctions, arguing that Farmers wrongfully suspended no-fault benefits under MCL 500.3142 and MCL 500.3148. Roberts sought summary disposition under MCR 2.116(C)(10) and an order relieving her of any responsibility to pay the $1,000 cancellation fee because she was "legally excused . . . because of her medical emergency." Roberts argued that there was an implied good-faith covenant between insurer and insured, and

---

[2] Apparently, the complaint had not yet been served on Farmers.

[3] MCL 500.3151 provides:

When the mental or physical condition of a person is material to a claim that has been or may be made for past or future personal protection insurance benefits, the person shall submit to mental or physical examination by physicians. A personal protection insurer may include reasonable provisions in a personal protection insurance policy for mental and physical examination of persons claiming personal protection insurance benefits.

that Farmers failed to act in good faith and its actions demonstrated a disdain for fair dealing. Roberts argued that it was impossible for Underwood to attend the medical evaluation, and that "impossibility of performance relieves the promisor of any duty." Roberts further argued that: (1) Farmers had an obligation to continue benefits for Underwood; (2) Farmers could have hired a case manager or made transportation arrangements for Underwood; (3) there was no noncooperation *by Underwood* to justify termination of benefits; and (4) sanctions should be awarded because benefits were unreasonably refused.

On March 31, 2005, Farmers filed its response to Roberts's motion, arguing that (1) its suspension of benefits was reasonable because Underwood repeatedly failed to attend IMEs; (2) under MCL 500.3151, Underwood was required to attend IMEs, "otherwise Defendant is fully authorized to deny [Underwood's] benefits for failure to fulfill her duties under the statute and the policy of insurance"; and (3) equity required that Roberts reimburse Farmers the $1,000 cancellation fee.

On April 12, 2005, Roberts, as plaintiff and as third-party defendant, filed a reply brief. Roberts argued that Farmers ignored Roberts's critical illness, which placed her in the intensive care unit of the hospital at the time of the IME in question; Farmers' unreasonably closed its file; Farmers retaliated for the filing of the motion for sanctions; and Farmers misrepresented that medical expenses had not been incurred. Specifically, Roberts argued:

> After the lawsuit was filed, Farmers realized it had wrongfully closed the file and admitted it had the obligation to continue processing benefits. As such, [Underwood's] doctors were informed that they could continue to treat [Underwood] and submit invoices. *These were direct representations from Farmers' adjuster Wanda*

*Tremble*. As such, [Underwood's] medical treatments were rescheduled, attended and bills were submitted.

*After Plaintiff's Motion for Sanctions was filed,* Farmers (again) cut off [Underwood's] benefits. . . . Farmers['] retaliatory conduct was confirmed by [Underwood's] counselor's letter dated March 7, 2005. This letter details how Farmers completely retracted its position after the Motion was filed. [Emphasis in original.]

Thus, Roberts contended that Farmers initially reinstated benefits after the lawsuit was filed, but again suspended benefits after the motion for sanctions was filed.

On the principal claim, the trial court ruled in plaintiff's favor. The trial court entered an "order granting plaintiff's motion for declaratory judgment, summary disposition and sanctions," providing that (1) Farmers' refusal to reinstate benefits absent payment of $1,000 was unreasonable; (2) plaintiff's counsel shall submit his bill for fees to Farmers; (3) Farmers shall reinstate [Underwood's] no-fault benefits; (4) [Underwood] shall submit to an IME; and (5) the "issue of the compensability of Brittany Underwood's past, present and/or future medical expenses remains for future determination by this Court."

The trial court ruled in Farmers' favor on its third-party claim. The trial court entered an "order of judgment for third-party plaintiff," providing that "Roberts shall be responsible to pay . . . Farmers . . . $1,000.00 in payment for the cancellation fee . . . ."

On April 28, 2006, the trial court entered an "Order of Dismissal with Prejudice and Judgment for Plaintiff/Third-Party Defendant," awarding $12,600 in attorney fees to plaintiff, Roberts, as next friend of Underwood, under MCL 500.3148. Farmers now appeals as of right, and Roberts cross-appeals as of right.

II

A

Farmers argues that the trial court clearly erred in awarding attorney fees to Underwood under MCL 500.3148. This Court reviews a decision to award or deny attorney fees under MCL 500.3148(1) for clear error. *Beach v State Farm Mut Auto Ins Co*, 216 Mich App 612, 628; 550 NW2d 580 (1996). "[I]f the trial court's finding of unreasonable refusal or delay pursuant to MCL 500.3148(1) . . . is clearly erroneous, it will be reversed on appeal." *Id.* "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 381-382; 652 NW2d 474 (2002).

B

MCL 500.3148 provides, in pertinent part:

> (1) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. *The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.* [Emphasis added.]

MCL 500.3142 provides that "[p]ersonal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained."[4] "[A]ttorney

---

[4] What are commonly called "PIP benefits" are actually personal protection insurance (PPI) benefits by statute. MCL 500.3142. However,

fees are payable only on *overdue* benefits for which the insurer has unreasonably refused to pay or unreasonably delayed in paying." *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 485; 673 NW2d 739 (2003).

The purpose behind the no-fault act's attorney-fee penalty provision is to ensure that the insurer promptly makes payment to the insured. *Beach, supra* at 629. However, "[a] refusal or delay in payment by an insurer will not be found unreasonable within the meaning of § 3148(1) where the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty." *McCarthy v Auto Club Ins Ass'n*, 208 Mich App 97, 103; 527 NW2d 524 (1994). Where there is a delay or refusal, a rebuttable presumption of unreasonableness arises, and the insurer has the burden of justifying the refusal or delay. *Beach, supra* at 629.

Here, Farmers refused payment of claims. Plaintiff submitted proofs to the trial court that claims were submitted on Underwood's behalf by Therapy Center L.L.C. This evidence indicates that Farmers refused payment of these claims, the amount of which is unclear. Therefore, this Court rejects Farmers' argument that there was no denial of claims.

But plaintiff must show that Farmers unreasonably refused payment on *overdue* benefits. *Proudfoot, supra* at 485. Benefits are overdue if they are not paid within 30 days after the insurer receives reasonable proof of the fact and amount of the loss sustained. MCL 500.3142. Here, the Therapy Center letters indicate that Farmers denied claims early in the month of February 2005. Plaintiff's action was filed on August 20, 2004, and plaintiff's motion was filed on January 26,

lawyers and others call these benefits PIP benefits to distinguish them from property protection insurance benefits.

2005. Therefore, there is no evidence that *at the time plaintiff filed suit or filed her motion,* benefits were overdue.

Also, there is the question whether Farmers *"unreasonably* refused to pay the claim[s]." MCL 500.3148 (emphasis added). The reason Farmers refused the claims was that Underwood repeatedly failed to attend scheduled IMEs. The statute does not define "unreasonably"; therefore, this Court looks to caselaw for definition of this term. "A refusal or delay in payment by an insurer will not be found unreasonable within the meaning of § 3148(1) where the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty." *McCarthy, supra* at 103. Thus, the question becomes whether Farmers' denial was the product of a legitimate question of statutory construction or a bona fide factual uncertainty.

Farmers had a statutory right to require that Underwood undergo physical and psychological IMEs. MCL 500.3151 provides: *"When the mental or physical condition of a person is material to a claim* that has been or may be made for past or future personal protection insurance benefits, *the person shall submit to mental or physical examination by physicians."* (Emphasis added.) "Shall" is mandatory. *American Federation of State, Co & Muni Employees v Detroit,* 267 Mich App 255, 260; 704 NW2d 712 (2005). Because Underwood's mental and physical conditions were material to her claims for benefits relating to her mental and physical health, she had a statutory duty under MCL 500.3151 to undergo the neuropsychological and physical IMEs.

Underwood repeatedly failed or refused to attend the physical and psychological IMEs. Underwood therefore breached her statutory duty to "submit to mental or

physical examination by physicians." MCL 500.3151. Farmers did not conclude that because of Underwood's breach, benefits were irrevocably denied; rather, it merely suspended those benefits until Underwood (1) paid the $1,000 cancellation fee and (2) submitted to a psychological IME. Because Underwood had breached her statutory duty to submit to IMEs, Farmers had a legitimate statutory question, namely, whether a claimant, upon breach of her statutory duty to submit to IMEs, remains entitled to continuing PIP benefits. The statute provides no penalty for a claimant's breach of his or her duty to submit to IMEs; therefore, Farmers raises a legitimate statutory question regarding the appropriate consequence of Underwood's breach of her statutory duty. Because Farmers had a legitimate question of statutory construction, its suspension of benefits to Underwood was reasonable. *McCarthy, supra* at 103. We hold that where a claimant repeatedly breaches his or her statutory duty to submit to IMEs, an insurer may properly suspend benefits pending completion of any requisite IME. Otherwise, an insured could breach with impunity his or her duty to submit to IMEs, and the insurer would have no way of investigating whether the injury claims were legitimate.

In addition to the statutory duty to submit to IMEs, Farmers' no-fault policy imposes on a person claiming coverage under the policy a duty to "[s]ubmit to physical examinations at our expense by doctors we select as often as we may reasonably require." The policy does not articulate the remedy for breach of this duty. The general rule is that a remedy for breach of contract should make the nonbreaching party whole or "place the nonbreaching party in as good a position as if the contract had been fully performed." *Corl v Huron Castings, Inc*, 450 Mich 620, 625-626; 544 NW2d 278 (1996). Allowing Farmers to suspend benefits places

Farmers in as good a position as if Underwood had submitted to a neuropsychological IME because it puts Farmers in the same position as it would be had the IME shown that Underwood lacked a brain injury caused by the accident. Whether viewed as a remedy for breach of the statutory duty to submit to IMEs or as a remedy for breach of a contractual duty to submit to IMEs, the proper remedy is for the insurer to suspend performance of its duties.

Further, Farmers also had a bona fide factual uncertainty regarding Brittany's claims. Namely, Farmers had reason to believe that Underwood did not suffer a brain injury from the automobile accident in question. Underwood was wearing her seat belt, so it is unclear how she could have struck her head on the windshield. In April 2003, Dr. Donders reported: "Affect is broad in range and she does not display the hypervigilance, need for avoidance, etc. that one tends to see with PTSD [post-traumatic stress disorder]. Mental status exam is largely within normal limits for age . . . ." Dr. Donders reported that Underwood was "[i]nvolved as restrained passenger in two MVAs [motor vehicle accidents], one on 12/02/02 [sic] and one on 01/10/03; neither with LOC [loss of consciousness]. Head CT [computerized axial tomography scan] was normal. On no routine medications." A physical therapy record from February 2, 2004, indicated that Underwood's increased complaints of pain were not supported by objective findings. The physical therapist suspected that Underwood was "picking up on some . . . methods of achieving secondary gains through disability/pain complaints." In light of the foregoing, Farmers had a bona fide factual uncertainty regarding the legitimacy of Underwood's brain injury claims, and therefore its suspension of benefits was reasonable. *McCarthy, supra* at 103.

C

Roberts argues that by signing the orders indicating "approved as to form and content," Farmers waived the right to appeal the trial court's orders awarding attorney fees. Roberts cites *Wold v Jeep Corp*, 141 Mich App 476, 479; 367 NW2d 421 (1985), for the proposition that orders that are signed and approved as to "form and content" are in effect consent judgments that preclude an appeal. *Wold* states that orders approved as to form and content are the equivalent of a consent judgment, and cannot be attacked absent proof of mistake, inadvertence, surprise, or excusable neglect. *Id.* Roberts also relies on *Trupski v Kanar*, 366 Mich 603, 607; 115 NW2d 408 (1962). However, our Supreme Court has rejected a broad applicability for *Trupski*:

> As the Court of Appeals dismissal order reflects, this Court did state in *Trupski v Kanar*, 366 Mich 603, 607; 115 NW2d 408 (1962), that "[t]he order of the court is not reviewable here since the defendant consented to it both as to form and substance." However, on many occasions the Supreme Court and the Court of Appeals have addressed the merits of a case, notwithstanding the fact that such a notation was appended to the order.

> We believe that the better rule is stated in *Kirn v Ioor*, 266 Mich 335, 336-338; 253 NW 318 (1934), in which this Court explained:

> "When the case was finally submitted, after argument, the presiding judge announced briefly his findings and decision from the bench, requesting plaintiff's attorney to draw decree and order as orally declared. That the instrument plaintiff's attorneys drew was strictly in accordance with the announced decision of the court is not questioned. It bears the indorsement—"Approved as to substance and form, Renihan and Lilly, attorneys for defendant, Bessie A. Yeider." Apparently use of the word "substance" is stressed as converting the instrument, so indorsed, into a consent decree.

"Under attending circumstances shown it cannot be so construed, but only as recognition that the proposed decree was legally formulated, and contained in substance the decision as orally announced by the court. There is no evidence of any preliminary discussion or negotiations between attorneys looking to compromise or surrender of any rights by either party. Both sides were represented by competent attorneys, veteranized in the science of jurisprudence, its practical application and the amenities between opposing attorneys in litigation. It was incumbent upon prevailing attorneys to prepare the decree in legal phraseology and in substance as the court announced it. If not approved in writing by the losing attorneys, it became the duty of the prevailing attorneys to prepare and serve upon them a copy of the proposed decree, with notice of time and place it would be presented to the deciding judge for settlement. Court Rule No. 8 (1933), and *Herman v Wayne Circuit Judge,* 236 Mich 604 [211 NW 52 (1926)]. The only consent or favor asked or granted was in effect waiver of notice for settlement of the decree—a common courtesy in practice, where delay and labor in complying with the rule could serve no useful purpose to either party. The possibility of any claim that this is a consent decree was then apparently remote from the minds of defendant's attorneys, for their next move was application to the trial court to set aside that decree and grant a rehearing, denial of which was followed by this application for mandamus to compel that court to do so . . . ."

See also *Aubuchon v Farmers Ins Exchange,* 448 Mich 860 [528 NW2d 733] (1995).

In the present case, the property owner vigorously litigated its position in circuit court, and then acted promptly to perfect an appeal. There is nothing in the record to suggest that approval of the disputed order "as to form and content" signaled the property owner's agreement with the trial judge's ruling.

Where there is no indication that the parties have stipulated to the outcome, the analysis found in *Kirn* is appropriate. We therefore reverse the order of the Court of Appeals and remand this case to the Court of Appeals for

> consideration of the merits of the appeal filed by the
> property owner. MCR 7.302(F)(1). [*Ahrenberg Mechanical
> Contracting, Inc v Howlett*, 451 Mich 74, 77-79; 545 NW2d
> 4 (1996).]

Here, there is no indication that the parties stipulated
to the outcome; therefore, the analysis in *Kirn* is
applicable. Farmers vigorously litigated its position in
the trial court, and then acted promptly to perfect an
appeal. *Ahrenberg Mechanical Contracting, Inc, supra*
at 79. Farmers was merely indicating that it approved of
the content of the orders as being reflective of the trial
court's rulings. Nothing in the record suggests that
approval of the disputed order "as to form and content"
signaled Farmers' agreement with the trial judge's
ruling. See *id*. Therefore, Farmers is not precluded from
appealing the orders in question.

### III

#### A

On cross-appeal, Roberts argues that the trial court
erred in ordering her to pay the $1,000 cancellation fee
charged by Dr. Fabiano. The trial court's decision that
Roberts "shall be responsible to pay . . . Farmers . . .
$1,000.00 in payment for the cancellation fee" was
essentially a grant of summary disposition to Farmers
on its third-party claim against Roberts individually for
breach of contract. This Court reviews summary dispo-
sitions de novo. *Spiek v Dep't of Transportation*, 456
Mich 331, 337; 572 NW2d 201 (1998).

#### B

A promisor's liability may be extinguished in the
event his or her contractual promise becomes objec-
tively impossible to perform. *Bissell v L W Edison Co*, 9

Mich App 276, 284; 156 NW2d 623 (1967). There are two kinds of impossibility: original and supervening; supervening impossibility develops after the contract in question is formed. *Id.* Although absolute impossibility is not required, there must be a showing of "impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved." *Id.* at 285 (internal quotations omitted).

> The question whether a promisor's liability is extinguished in the event his contractual promise becomes objectively impossible to perform may depend upon whether the supervening event producing impossibility was or was not reasonably foreseeable when he entered into the contract. *Risk of nonperformance of a contract should not fairly be thrown upon the promisor, if an unanticipated circumstance had made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract. [Vergote v K Mart Corp (After Remand)*, 158 Mich App 96, 110; 404 NW2d 711 (1987) (citation omitted; emphasis added).]

Where there is conflicting evidence on the question of impossibility, it is a question of fact for the trier of fact to resolve. See *Barnes v B & V Const, Inc*, 137 Mich App 595, 598-599; 357 NW2d 894 (1984).

Here, the appointment in question was at Dr. Fabiano's business in Grand Rapids. Thus, the appointment was in the same city where Underwood lived. There is no indication that Underwood could not have taken a taxi or a public bus. There is therefore no indication that it would have been impossible, or even extremely difficult, for Underwood to keep the appointment with Dr. Fabiano. Further, there is no record evidence that Underwood advised Farmers that she needed their assistance with transportation. On the record before us, viewing the evidence in a light most favorable to Rob-

erts, there is no genuine issue of material fact on the question of impossibility. Therefore, the trial court did not err in ordering Roberts to pay the $1,000 cancellation fee.

IV

In conclusion, on the record before us, the trial court's decision to award attorney fees to plaintiff was clearly erroneous because (1) there is no evidence that at the time plaintiff filed suit or filed her motion, any benefits were overdue; and (2) Farmers' suspension of benefits was reasonable, because (a) there was a legitimate question of statutory construction regarding the penalty for Underwood's breach of her statutory duty to submit to mental and physical IMEs, and (b) Farmers had a bona fide factual uncertainty regarding the legitimacy of Underwood's brain injury claims. On cross-appeal, on the record before us, there is no indication that it would have been impossible, or even extremely difficult, for Underwood to keep the appointment with Dr. Fabiano. Therefore, the defense of impossibility did not apply, and the trial court did not err by ordering Roberts to pay the $1,000 cancellation fee.

On the principal appeal, we reverse and remand for entry of judgment in Farmers' favor. On the cross-appeal, we affirm. We do not retain jurisdiction.