*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF RIVERVIEW,

        Plaintiff-Appellee,

v

PRUDENTIAL SECURITY INC,

        Defendant-Appellant.

UNPUBLISHED
July 15, 2021

No. 353950
Wayne Circuit Court
LC No. 19-002485-CK

Before: RIORDAN, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

In this breach-of-contract action, defendant, Prudential Security Inc (Prudential), appeals the trial court's order granting summary disposition in favor of plaintiff, City of Riverview (Riverview). We affirm.

## I. BACKGROUND

Prudential had been providing security services for Riverview's landfill since 2011. In July 2014, Riverview and Prudential executed a three-year contract under which Prudential would provide security services for the landfill until July 2017. Per the contract, Prudential promised to provide uniformed security guards and an all-terrain vehicle, which the guards used to make hourly security checks or "rounds" of the landfill's perimeter. The landfill's roads are dirt roads covered with gravel and, as one Prudential employee described them, they are "rocky and bumpy." Riverview employees perform maintenance on the roads as needed, including leveling the roads and laying down fresh dirt and gravel.

In June 2017, with the contract expiration date approaching, Riverview and Prudential agreed to extend the contract until July 2020 and signed an addendum to that effect. Although Prudential had previously expressed concern to Riverview about Prudential's rising vehicle maintenance costs, Prudential did not mention this concern when negotiating the contract extension. Instead, Prudential's only requested change to the contract was for hourly rate increases if either the state or federal minimum wage was increased. Riverview agreed to this condition and the contract otherwise remained the same.

-1-

A few months after the parties executed the addendum, Prudential requested an increase to the contract price because of rising vehicle costs. That request was denied as were subsequent requests for pay increases to cover vehicle maintenance and repairs costs. Prudential continued to provide the security services required by the contract throughout 2017 and 2018. On January 13, 2019, Prudential informed Riverview that it would be terminating service as of January 18, 2019. Riverview sought bids for an emergency replacement for Prudential to cover the remainder of the contract term. Riverview initially hired Slater Security Services, LLC (Slater) on a 180-day emergency contract. As the 180-day emergency contract neared its end, Riverview solicited bids for a new three-year contract and ultimately awarded the contract to Slater.

In February 2019, Riverview sued Prudential for breach of contract. Riverview claimed damages of $48,423.48, which represents the amount that Riverview paid Slater above the contract rate agreed to by Prudential. After discovery, Riverview moved for summary disposition under MCR 2.116(C)(9) (failure to state a defense) and (C)(10) (no genuine issue of material fact). Riverview argued that Prudential had materially breached the terms of the contract without a valid defense.

In response, Prudential argued that its duty to perform under the contract was discharged by impossibility or impracticability. Prudential reasoned that the condition of the landfill's roads made it impracticable to provide security services because the roads routinely damaged Prudential's vehicles. Alternatively, Prudential argued that its duty to provide security services never arose because Riverview had breached an implied condition precedent in the contract to maintain the landfill's roads in suitable condition. Prudential further contended that, even if it had unjustifiably breached the contract, there was a question of fact as to whether Riverview had appropriately mitigated its damages when two security companies had submitted lower bids than Slater.

After hearing oral argument, the trial court granted Riverview's motion for summary disposition. The court rejected Prudential's defense of impossibility or impracticability, finding that the uncontradicted evidence showed that Prudential was able to perform the hourly rounds without undue hardship. The court also ruled that the contract did not contain an implied condition precedent to maintain the roads or, if there was an implied condition, Riverview did not breach it given the daily security logs showing that Prudential's guards were able to make their rounds. Lastly, the court found that there was no genuine issue of fact that Riverview made reasonable efforts to mitigate its damages. This appeal followed.

## II. ANALYSIS

### A. EXCUSE FOR NONPERFORMANCE

-2-

Prudential first argues that there is a genuine issue of material fact whether the defense of impossibility or impracticability discharged or excused its contractual duty to provide security services to Riverview. We disagree.[1]

A party's contractual obligation to perform may be discharged when a circumstance arises that renders performance impossible or impracticable. *Roberts v Farmers Ins Exch*, 275 Mich App 58, 73-74; 737 NW2d 332 (2007). An impossibility can either be original or supervening. *Id.* at 74. A supervening impossibility develops after the contract in question is formed, while an original impossibility refers to a circumstance already in existence when the contract was formed but was unknown to the parties. *Id.* Generally, for impossibility or impracticability to discharge a party's contractual duties, the circumstance that arises must be one that the parties could not have reasonably foreseen at the time they entered the contract. *Id.* at 74; *Rogers Plaza, Inc v SS Kresge Co*, 32 Mich App 724, 743; 189 NW2d 346 (1971).

In this case, the evidence conclusively shows that the condition of the landfill's roads is a circumstance that Prudential either knew about or could have reasonably foreseen. Prudential had been providing security service to Riverview since 2011, giving Prudential ample time to become familiar with the landfill's roads. It was therefore reasonably foreseeably to Prudential—both in 2014 when it signed the three-year contract and in 2017 when it signed the extension—that its vehicles would be traversing unpaved, rugged roads and that there would be corresponding vehicle maintenance and repair costs. Although Prudential's business and compliance manager testified that the roads became worse in 2017, there was no evidence supporting this assertion. Specifically, there were no photographs of the alleged road conditions or documentation showing an increase in vehicle costs over time. Moreover, the contract provided that Prudential would release all tort claims against Riverview "arising out of injuries sustained by [Prudential] by reason of the inherently dangerous conditions at the premises described herein." From this provision and their knowledge of the property, Prudential could have reasonably foreseen the incurrence of vehicle maintenance and repair costs.

Even assuming that the vehicle-related costs were not foreseeable, Prudential's defense of impossibility would still fail. "Although absolute impossibility is not required, there must be a showing of impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved." *Roberts*, 275 Mich App at 74. "A mere change in the degree of difficulty or

---

[1] We review de novo a trial court's decision to grant summary disposition. *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v City of Pontiac*, 309 Mich App 611, 617; 873 NW2d 783 (2015). Although Riverview moved for summary disposition under MCR 2.116(C)(9) and (C)(10), because the parties relied on evidence beyond their pleadings, we apply the standard of review applicable to summary disposition under MCR 2.116(C)(10). See *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.*

expense due to such causes as increased wages, prices of raw materials, or costs of construction, unless well beyond the normal range, does not amount to impracticability . . . ."  Restatement Contracts, 2d, § 261, comment d.

Even when viewed in a light most favorable to Prudential, the evidence shows that the landfill's roads presented neither an unreasonable physical barrier nor an unreasonable economic barrier to Prudential's performance.  First, the daily security logs produced by the parties show that, with a few exceptions, Prudential's security guards were able to complete their rounds of the property without incident.  The deposition testimony was consistent with the logs.  The landfill's lead operator recalled four or five occasions where Prudential security guards had "ran into something," damaging their vehicle to the point that they could not drive it to complete rounds.  Similarly, the landfill's facility manager remembered seeing Prudential vehicles with flat tires and recalled two occasions where the vehicle was so damaged from an accident that it could not be driven.  One time, a security guard had backed into the side of the facility manager's work truck; another time, a security guard's SUV's front end had been damaged.  Even assuming these accidents were caused by the road conditions, they do not establish impossibility or impracticality when Prudential's security guards were able to perform the required rounds nearly every day without incident.  Indeed, Prudential's operations manager testified that the roads did not prevent him or the guards he oversaw from completing their rounds.

Prudential's real argument is not that performance was impossible, but that it became too expensive.  But Prudential has offered nothing to show that its vehicle-related costs presented an unreasonable economic barrier to its performance.  Nowhere in the record does Prudential provide competent proof of its maintenance and repair costs.  It offered no receipts, invoices, pictures, or other evidence demonstrating an exorbitant expense.  All it offered was a handwritten note created by its business and compliance manager listing various expenses allegedly incurred from 2018 and 2019.  The manager testified that she prepared the handwritten note the day before her deposition and that the note was based on her review of Prudential's expense records from 2018 and 2019.  However, the note merely provides that Prudential spent $4,500 on vehicle repairs in 2018, and $800 in 2019.  There is nothing in the record from which to conclude that these alleged costs were anything more than a mere change in the degree of difficulty or expense, especially considering the contract at issue was worth more than $200,000.  These were not such extreme expenses that it would have been impracticable for Prudential to continue performance.

In the alternative, Prudential argues that its obligation to perform never arose because the contract contained an implied condition precedent requiring Riverview to keep the roads in suitable condition and that Riverview breached that condition.

"A condition precedent is a condition that must be met by one party before the other party is obligated to perform[.]"  *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 411; 646 NW2d 170 (2002) (quotation marks and citation omitted).  The failure to satisfy a condition precedent precludes any cause of action for the failure of performance.  *Berkel & Co Contractors*, 210 Mich App 416, 420; 533 NW2d 838 (1995).

Prudential does not identify any caselaw addressing whether a condition precedent to performance may be implied.  However, even if this is a viable legal argument and the parties' contract contained the claimed condition, Prudential has offered no evidence that Riverview failed

to fulfill the condition. The facility manager testified that, whenever the road became too bumpy or craggy, he or another Riverview employee would grade the road, level the surface, and lay down fresh gravel. Though he did not keep records of how often he did this, he estimated that he did so once a month. He also testified that he or another Riverview employee serviced the roads the few times that Prudential's security guards complained about them. Prudential offered nothing to rebut this testimony. As noted, Prudential's operations manager testified that the condition of the roads never prevented him or his subordinates from completing their rounds. Although there is some evidence that Prudential's vehicles were damaged on occasion because of the road conditions, Prudential was nonetheless able to perform its contractual obligations. Thus, the record does not demonstrate a genuine issue of material fact as to whether Riverview made a reasonable effort to maintain its roads.

In sum, the trial court did not err by finding no genuine issue of material fact as to whether Prudential's duty to perform was excused or never arose. Because Prudential does not otherwise dispute that it breached the contract, the court correctly granted summary disposition to Riverview.

## B. MITIGATION OF DAMAGES

Prudential also argues that, even if it breached the contract without justification, there is a genuine issue of material fact as to whether Riverview made reasonable efforts to mitigate its damages. We again disagree.

"Mitigation of damages is a legal doctrine that seeks to minimize the economic harm arising from wrongdoing." *Morris v Clawson Tank Co*, 459 Mich 256, 263; 587 NW2d 253 (1998). A party's duty to reasonably mitigate may be summarized as follows:

> Where one person has committed a tort, breach of contract, or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided. [*Id*. at 263-264 (quotation marks and citation omitted)].

"The defendant bears the burden of proving that the plaintiff failed to make reasonable efforts to mitigate damages." *Id*. at 266.

Generally, "[t]he question whether [a] plaintiff's efforts to mitigate damages were reasonable under the circumstances is one for the trier of fact." *Id*. at 270. But like all questions of fact, the trial court may decide the matter as a question of law at the summary-disposition stage when reasonable minds cannot differ on the conclusion. See *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) ("A question of fact exists when reasonable minds can differ on the conclusions to be drawn from the evidence.").

In this case, Prudential fails to show that there is a genuine question of material fact precluding summary disposition of its mitigation defense. As noted, after Prudential ceased performance of its contractual obligations, Riverview hired Slater to provide security services on a 180-day emergency contract. Of the firms that bid on that contract, Slater submitted the lowest bid at an hourly rate of $17.65. As the 180-day emergency contract neared its end, Riverview

solicited bids for a new three-year contract and selected Slater, who again offered an hourly rate of $17.65.

Prudential argues that Riverview failed to mitigate its damages because two other contractors submitted cheaper bids, referring to H & P Protective Services, Inc (H & P) and All Inclusive Security & Investigation, LLC (All Inclusive). However, as Riverview explained before the trial court, although All Inclusive charged an hourly service rate of $16.75—a rate lower than Slater's $17.65 per hour service rate—All Inclusive charged a $15 per day vehicle fee in addition to its hourly service rate. In contrast, Slater's vehicle fee was included in its hourly service rate. Slater also charged a much higher holiday hourly rate. Accordingly, All Inclusive did not submit a cheaper bid than Slater.

Offering $16.25 per hour, H & P submitted the lowest bid. However, Riverview explained that it chose Slater over H & P because: (1) Riverview was pleased with the quality of service provided by Slater during the emergency contract; and (2) Riverview viewed H & P as "geared more towards 'event-based-security services' rather than daily on-site security services."

Prudential fails to explain how Riverview's decision to award the three-year contract to Slater was unreasonable. Prudential does not identify any caselaw that the party must select the cheapest replacement service in order to reasonably mitigate their damages. Nor does Prudential dispute or even address Riverview's explanation for choosing Slater, i.e., that it was satisfied with their performance under the emergency contract and H & P was not aimed toward providing on-site security services. Based on the record before us, reasonable minds could not differ on the conclusion that Riverview made reasonable efforts to mitigate their damages. Accordingly, the trial court correctly granted summary disposition of this affirmative defense.

Affirmed. Riverview may tax appellate costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Riordan
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro