*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

FITNESS INTERNATIONAL, LLC,

Plaintiff-Appellant,

v

NATIONAL RETAIL PROPERTIES LIMITED
PARTNERSHIP, also known as NATIONAL
RETAIL PROPERTIES, LP,

Defendant-Appellee.

UNPUBLISHED
October 13, 2022

Nos. 358680; 358983
Macomb Circuit Court
LC No. 2020-004109-CB

Before: SWARTZLE, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

In these appeals[1] involving the enforceability of a commercial lease during the government shutdown orders of the COVID-19 pandemic, plaintiff appeals by right the circuit court's opinion and order granting summary disposition in favor of defendant in Docket No. 358680 and the circuit court's order granting defendant's motion for attorney fees in Docket No. 358983. We affirm in Docket No. 358680 and reverse in Docket No. 358983.

## I. BACKGROUND

Plaintiff is a nationwide operator of health clubs and fitness centers, including in Michigan. In July 2008, plaintiff entered into a 15-year commercial lease with defendant for premises located in Warren, Michigan, where plaintiff intended to operate a health and fitness facility. The lease required plaintiff to pay a base monthly rent in equal installments. On March 10, 2020, Michigan Governor Gretchen Whitmer declared a state of emergency in Michigan because of the novel COVID-19 pandemic. Five days later, Governor Whitmer issued an executive order mandating the closure of all gyms in Michigan, effective March 16, 2020, to prevent the further spread of the virus. The order prohibited plaintiff from operating its gym between March 17, 2020 and

---

[1] See *Fitness Int'l LLC v Nat'l Retail Props LP*, unpublished order entered by the Court of Appeals on February 1, 2022 (Docket Nos. 358680, 358983) (ordering consolidation of appeals to advance the efficient administration of the appellate process).

September 9, 2020, when the shutdown was lifted. During the closure period, plaintiff did not pay rent from April 2020 through August 2020, for a total of $109,561.11. In August 2020, defendant sent plaintiff a notice of default and demanded payment under the lease. Plaintiff then paid all the outstanding rent due.

## A. LITIGATION

Several months later, plaintiff filed a two-count complaint alleging breach of the lease and seeking a declaratory judgment. In support, plaintiff alleged that defendant breached the lease by failing to abate the rent during the government closure period and also by failing to deliver to plaintiff the use of the premises as a health club and fitness center. In particular, plaintiff alleged that the purpose of the lease—to use the premises as a full-service health club—became frustrated and rendered both impossible and impracticable because the shutdown order prohibited plaintiff from using the premises in that manner. Plaintiff added that defendant breached its warranty of quiet enjoyment of the premises, as provided in the lease, and that full use was a condition precedent to plaintiff's obligation to pay rent. Plaintiff sought a judgment declaring, in part, that the shutdown excused its performance under the lease and required a return of all monies paid during the closure period.

## B. MOTIONS FOR SUMMARY DISPOSITION

The parties eventually filed cross-motions for summary disposition under MCR 2.116(C)(10). Defendant argued that plaintiff was not entitled to abate its rental payments during the shutdown period under the doctrines of frustration of purpose and impossibility and impracticability, in part, because plaintiff had assumed the risk of the government order under § 9.2 of the lease, and payment of rent was not impossible. Regarding the warranty of quiet enjoyment claim, defendant posited that dismissal was appropriate because it had not interfered with plaintiff's quiet enjoyment; rather, the government order had caused the interference.

Plaintiff countered that it had established the elements of frustration of purpose. Plaintiff added that it had not assumed the risk of the government order because § 9.2 of the lease only applied to orders relating to physical improvements and alterations of the premises. Regarding the doctrine of impossibility and impracticability, plaintiff asserted that, because it was impossible to operate its health and fitness club during the shutdown, this impossibility excused its obligation to pay rent. For this same reason, plaintiff argued, the lease's express warranty of quiet enjoyment had also been breached.

Ultimately, after a hearing on the motion, the circuit court issued an opinion and order granting defendant summary disposition. Regarding frustration of purpose, the circuit court found that plaintiff had not shown that the government shutdown had rendered the lease "virtually worthless" and that plaintiff had assumed the risk of a government shutdown under § 9.2. of the lease. The court rejected plaintiff's interpretation of § 9.2, noting that it broadly included "various potential sources of required compliance" and that "by its own terms, Section 9.2, does not limit the cost allocation to only structural aspects of compliance." Next, given that plaintiff had paid the rent under protest, the circuit court rejected plaintiff's contention that the doctrine of impossibility and impracticability excused its payment of rent under the lease. The court reasoned that "economic unprofitability is not the equivalent to impossibility of performance and will not

-2-

operate to relieve a party of its contractual obligations." Finally, regarding the warranty of quiet enjoyment, the circuit court found that, because defendant did not cause the interruption, plaintiff had not shown that the lease's quiet enjoyment provision suspended plaintiff's obligation to pay rent.

## C. MOTION FOR ATTORNEY FEES

After plaintiff filed a claim of appeal from the summary disposition order, defendant moved for an award of attorney fees and costs of $20,321. Defendant argued that § 25 of the lease entitled it to reasonable attorney fees and costs as the prevailing party. Plaintiff opposed any award of attorney fees or costs, arguing, in part, that defendant's claim for attorney fees was barred because defendant failed to file a counterclaim for contractual fees as damages. Plaintiff asserted that, because defendant sought attorney fees based on the lease, defendant had to plead a claim for contract damages.

The circuit court ruled that the language of the lease required awarding defendant attorney fees and it held an evidentiary hearing and adjusted downward the hourly rate requested by defendant to $300 an hour. Later, the circuit court entered a written order awarding defendant costs of $164.99 and attorney fees of $13,410 (44.7 hours at $300 an hour). Plaintiff separately appealed this order.

## II. ANALYSIS

## A. DOCKET NO. 358680

On appeal in Docket No. 358680, plaintiff argues that the circuit court erred by granting summary disposition under MCR 2.116(C)(10) on its claims that frustration of purpose, impossibility and impracticability, and breach of the warranty of quiet enjoyment excused its performance under the lease. We disagree.

This Court reviews de novo a circuit court's decision on a motion for summary disposition. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). Summary disposition under MCR 2.116(C)(10) is proper if there "is no genuine issue about any material fact and the moving party is entitled to judgment . . . as a matter of law." *Bergen v Baker*, 264 Mich App 376, 381; 691 NW2d 770 (2004). In reviewing the circuit court's decision, this Court "considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Further, the "interpretation of a contract are questions of law reviewed de novo." *Clark v Al-Amin*, 309 Mich App 387, 394; 872 NW2d 730 (2015) (quotation marks and citation omitted).

## 1. FRUSTRATION OF PURPOSE

Plaintiff first argues that the circuit court erred by concluding that the frustration of purpose doctrine was inapplicable because plaintiff assumed the risk of the shutdown order under § 9.2. of

the lease. According to plaintiff, it did not assume the risk of the shutdown order and § 9.2 of the lease merely obligated it to comply with orders relating to physical improvements and alterations of the premises. We disagree.

The doctrine of frustration of purpose operates as an excuse for nonperformance of contractual obligations. *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003). Generally, the doctrine is "asserted where a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract." *Id*. at 133-134 (quotation marks and citation omitted). Further, the frustration "must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract" and "the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made." *Id*. at 135. The following conditions must be met for a contracting party to avail itself of the doctrine:

> (1) the contract must be at least partially executory; (2) the frustrated party's purpose in making the contract must have been known to both parties when the contract was made; (3) this purpose must have been basically frustrated by an event not reasonably foreseeable at the time the contract was made, the occurrence of which has not been due to the fault of the frustrated party and the risk of which was not assumed by him. [*Id*. at 134-135.]

Plaintiff claims it did not assume the risk of the occurrence (the government shutdown order) under § 9.2 of the lease. Resolution of this argument necessarily requires consideration of the lease's language. "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Zurich Ins Co v CCR and Co*, 226 Mich App 599, 603; 576 NW2d 392 (1997) (quotation marks and citation omitted). "This Court must determine the intent of the parties to a contract by reference to the contract language alone." *Hubbell, Roth & Clark, Inc v Jay Dee Contractors, Inc*, 249 Mich App 288, 291; 642 NW2d 700 (2001). When the terms of a contract are unambiguous, this Court construes and enforces the contract as written and their construction is for this Court to determine as a matter of law. *Quality Prod and Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003); *Zurich Ins Co*, 226 Mich App at 604.

Section 9.2 of the lease provides:

> *Tenant, at Tenant's sole expense, promptly shall comply with all applicable statutes, ordinances, rules, regulations, orders, covenants and restrictions of record, and requirements in effect during the term or any part of the term hereof, regulating the use by Tenant of the Premises,* including, without limitation, the obligation at Tenant's cost, to alter, maintain, or restore the Premises in compliance and conformation with all laws relating to the condition, use or occupancy of the Premises during the term (including, without limitation, any and all requirements as set forth in the Americans with Disabilities Act) and regardless of (i) whether such laws require structural or non-structural improvements, (ii) whether the improvements were foreseen or unforeseen, and (iii) the period of time remaining in the term. Tenant shall also comply, at Tenants sole expense, with any applicable laws and regulations regarding the presence or remediation of mold on the Premises; provided, however, that Landlord and Tenant acknowledge mold to be

naturally occurring and present in all buildings and outdoor areas, and the obligation of Tenant under this section to comply with applicable laws and regulations regarding mold shall not be interpreted as a warranty that there will be no mold on the Premises during or at the expiration of the Term so long as such presence is not a violation of any such applicable laws and regulations. [Emphasis added.]

The portion of § 9.2. in italics above required plaintiff, at its "sole expense," to comply with all applicable orders in effect during the term of the lease that regulate plaintiff's use of the premises. Governor Whitmer's shutdown order constituted an order in effect during the lease term that regulated plaintiff's use of the premises. Thus, under § 9.2, plaintiff had to comply with that order at its "sole expense," meaning plaintiff bore the burden of any financial consequences stemming from compliance with the order. Under § 9.2 of the lease, therefore, plaintiff assumed the risk of the shutdown order, including the loss of revenue from its customers, and the continued payment of rent.

On appeal, plaintiff contends that § 9.2 does not apply to government shutdown orders, but only to improvements, alterations, restorations, maintenance, repairs, and remediations required by "statutes, ordinances, rules, regulations, orders, covenants and restrictions of record," as demonstrated by the examples provided in § 9.2. Plaintiff's interpretation, however, ignores the plain meaning of the contractual language by imposing limitations that do not exist. In fact, the examples provided in § 9.2, pertaining to the Americans with Disabilities Act and mold are included as examples of the type of orders for which plaintiff assumes the risk. The lease, however, specified that these examples are not exclusive. The scope of § 9.2 is not limited to the examples included within it.

Plaintiff also argues that § 9.2 does not apply to the payment of rent, asserting that the provision only obligates plaintiff to incur the expense of complying with the order and that such compliance did not require plaintiff to pay rent to comply. Regardless whether continuing to pay rent despite a shutdown order can be deemed an "expense," nothing in § 9.2 relieved plaintiff of the obligation to pay rent in the event a government order that shut down the premises. Moreover, as the circuit court correctly noted, the plain language of § 9.2 does not limit the form of the expense incurred to only payments for structural changes as opposed to loss of revenue. Plainly, the phrase "sole expense" envisions that plaintiff will be solely liable for any financial burden associated with the types of government action affecting plaintiff's use of the premises.[2]

---

[2] Plaintiff also asserts that § 5.1 of the lease excused its obligation to pay rent, which provided in relevant part:

Tenant acknowledges the Premises are currently subject to covenants, conditions and restrictions and other recorded documents . . . . Tenant acknowledges the Premises may become subject to future covenants, conditions and restrictions and other documents . . . but shall not be required to pay any costs of expenses under the Future CC&R's except as may be approved in writing by Tenant.

Because our assumption of risk analysis is dispositive, we need not consider plaintiff's argument that the circuit court erred by finding that the lease was not virtually worthless during the shutdown period. We also reject plaintiff's argument that no consideration existed during the shutdown period because it could not use the property as a fitness club. Plaintiff ignores that it retained possession of the property and had exclusive use of that property—even during the shutdown period—in exchange for the rental payments. Plaintiff makes no attempt to explain why possession and exclusive use of the entire premises, despite the shutdown, is not sufficient legal consideration. Moreover, plaintiff cites no relevant caselaw holding that the specific use of a property is the necessary consideration for a lease. Failure to sufficiently develop an argument or cite authority constitutes abandonment of the claim. See *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").[3]

## 2. WARRANTY OF QUIET ENJOYMENT

Plaintiff next argues that the circuit court erred by dismissing its claim for breach of the express warranty of quiet enjoyment. According to plaintiff, the parties went beyond the common law by including a contractual provision guaranteeing plaintiff the absolute right to enjoy full, quiet enjoyment of the premises throughout the lease. According to plaintiff, the circuit court ignored the express contractual language in favor of the common-law principles related to the implied warranty of quiet enjoyment, finding that the warranty had not been breached because defendant itself did not interfere with the use of the leasehold. We disagree.

Section 27.2 of the lease provides an express warranty of quiet enjoyment, as follows:

> Landlord covenants and warrants that Tenant shall have and enjoy full, quiet, and peaceful possession of the Premises, its appurtenances and all rights and privileges incidental thereto during the term, *subject to the provisions of this Lease* and any title exceptions or defects in existences at the time of the conveyance of the Premises to Landlord by Tenant. [Emphasis added.]

Contrary to plaintiff's assertion, this section is not without qualifiers and does not provide an absolute, unconditional guarantee to full quiet enjoyment of the premises. Mainly, the plain language of § 27.2 indicates that the right to quiet enjoyment is subject to the provisions of the

---

Section 5.1 plainly applies to covenants, conditions, restrictions, or other recorded documents—all types of recordable instruments—not to government orders. We, therefore, conclude that § 5.1 is not applicable to this matter.

[3] We additionally note, § 9.1 of the lease indicates the use of the premises for a health and fitness center is permissive but also nonexclusive. With the exception of certain specifically proscribed types of businesses, such as a factory, processing or rendering plant, head shop, certain adult-oriented businesses or flea markets, there are no other specific limitations to how the premises can be used.

lease.  In other words, the parties contemplated that plaintiff's right to quiet enjoyment may be suspended pursuant to certain provisions of the lease if and when they become applicable.

As previously explained, § 9.2 is relevant regarding the shutdown order because it required plaintiff's compliance with governmental orders, and under its terms plaintiff bore the risk of loss. Under § 27.2, plaintiff's right to quiet enjoyment was subject to § 9.2 which obligated it to comply with the governmental shutdown order even if it interfered with plaintiff's quiet enjoyment of the premises.  Consequently, because the right to quiet enjoyment is subject to § 9.2 of the lease and plaintiff's required compliance with the government shutdown order under § 9.2 interfered with plaintiff's quiet enjoyment, it cannot be said that § 27.2 of the lease was breached.

Plaintiff argues further that the circuit court erred by relying on a common-law rule applicable to the common-law warranty of quiet enjoyment, that "the covenant of quiet enjoyment is breached only when the landlord obstructs, interferes with, or takes away from the tenant in a substantial degree the beneficial use of the leasehold." *Slatterly v Madiol*, 257 Mich App 242, 258; 668 NW2d 154 (2003) (quotation marks and citation omitted).  Because defendant did not interfere with plaintiff's quiet enjoyment, the circuit court dismissed the claim.  Plaintiff's argument lacks merit.  As explained, § 27.2 does not grant an absolute right to quiet enjoyment. Further, plaintiff cites no authority in support of its claim that when the contracting parties expressly include a warranty of quiet enjoyment, common-law principles of the warranty of quiet enjoyment do not apply.  Indeed, plaintiff identifies nothing in the lease, or § 27.2, indicating that the parties intended to diverge from common-law principles of quiet enjoyment on which the circuit court relied.  Generally, "where terms having a definite legal meaning are used in a written contract, the parties to the contract are presumed to have intended such terms to have their proper legal meaning, absent a contrary intention appearing in the instrument." *In re Estate of Moukalled*, 269 Mich App 708, 721; 714 NW2d 400 (2006) (quotation marks and citation omitted).  A landlord's covenant of quiet enjoyment has a particular meaning in Michigan law and inherent in that meaning is the concept that the landlord's promise is breached only when it interferes with the tenant's use of the leasehold.  See *Slatterly*, 257 Mich App at 258; see also 49 Am Jur 2d, Landlord and Tenant § 481, pp 511-512 ("The interference with a tenant's possession and enjoyment of the demised premises by public officials in the exercise of police power, if not due to any default on the part of the landlord, is not a breach of the landlord's covenant of quiet enjoyment.").  Plaintiff's contention that any interference, no matter by whom, constitutes a breach of the warranty of quiet enjoyment, is not consistent with the meaning of the warranty of quiet enjoyment in Michigan law and is not supported by the contractual language.  Accordingly, we conclude that the circuit court did not err by dismissing the claim on the grounds that defendant did not interfere with plaintiff's quiet enjoyment of the premises.

### 3. IMPOSSIBILITY AND IMPRACTICABILITY

Plaintiff also argues that the circuit court erred by refusing to excuse plaintiff from its rental payment obligation under the doctrine of impossibility/impracticability.  According to plaintiff, the fact that it was impossible for it to use the premises during the shutdown period relieved it of its rental payment obligations and the court erred by concluding that the doctrine was inapplicable. We disagree.

The doctrine of impossibility/impracticability provides an excuse for nonperformance of contractual obligations when a contracting party's performance becomes objectively impossible to perform. *Liggett Restaurant Group, Inc*, 260 Mich App at 133; see also *Roberts v Farmers Ins Exch*, 275 Mich App 58, 73; 737 NW2d 332 (2007). Michigan courts have recognized two types of impossibility: original and supervening. *Roberts*, 275 Mich App at 73. Original impossibility of performance exists "when the contract was entered into, so that the contract was to do something which from the outset was impossible." *Bissell v L W Edison Co*, 9 Mich App 276, 284; 156 NW2d 623 (1967). "[S]upervening impossibility develops after the contract in question is formed." *Roberts*, 275 Mich App at 74. "Although absolute impossibility is not required, there must be a showing of impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved." *Id*. (quotation marks and citation omitted).

In this case, the circuit court ruled that that impossibility/impracticability doctrine did not excuse plaintiff from its rental obligation during the shutdown period because plaintiff could perform its obligations under the lease. Mainly, despite the shutdown and plaintiff's loss of revenue from membership fees, plaintiff had enough funds to pay the monthly rental payments in total after defendant sent its demand notice. "Economic unprofitableness is not the equivalent of impossibility of performance. Subsequent events which in the nature of things do not render performance impossible, but only render it more difficult, burdensome, or expensive, will not operate to relieve the contractor." *Chase v Clinton Co*, 241 Mich 478, 484; 217 NW 565 (1928). The fact that plaintiff faced some economic hardship because of the shutdown did not make its performance under the lease—its contractual obligation to pay rent—impossible. The circuit court did not err in this regard.

On appeal, plaintiff asserts that, because it was impossible for it to use the premises during the shutdown period, it should be excused from its rental payment obligations. Plaintiff's focus on its inability to use the premises as a health club during the shutdown is misplaced. Under the lease, plaintiff was contractually obligated to pay the rent in monthly installments—and this is the promised performance that must be evaluated for purpose of the impossibility doctrine. See *Roberts*, 275 Mich App at 73 ("A promisor's liability may be extinguished in the event his or her *contractual promise* becomes objectively impossible to perform." (Emphasis added.)) Comparatively, the lease did not obligate plaintiff to use the premises as a health and fitness club; instead, it provided that plaintiff "may" use the premises as a health and fitness center or such other use as plaintiff deemed fit in its reasonable business judgment. Consequently, even though plaintiff could not temporarily use the premises as a health and fitness club, plaintiff did not experience an impossibility of performance for purposes of the impossibility doctrine.

Plaintiff's inability to use the premises as a health and fitness club does not support plaintiff's position because plaintiff assumed the risk of the government shutdown. "[I]mpossibility . . . will not serve to discharge a party who has assumed the risk that a given event will be rendered impossible." *Frank's Nursery Sales, Inc v American Nat'l Ins Co*, 388 F Supp 76, 82 (ED Mich, 1974). Further, plaintiff cites no authority to support its claim that a lessee's inability to use the premises in a way it sees fit, for which it is not obligated under the lease, excuses the lessee's obligation to pay rent under the doctrine of impossibility/impracticability.

Of final note, plaintiff asserts that the doctrine of impracticability provides an independent basis for excusing its obligation and that the circuit court erred by failing to consider it separately.

Plaintiff cites no Michigan law in support of this claim and instead cites the Restatement (Second) of Contracts. As defendant notes, however, Michigan courts treat impracticability and impossibility interchangeably. See *Bissell*, 9 Mich App at 285 ("When considering the modern version of the rule as to supervening impossibility . . . it must be recognized that . . . 'impossibility' means . . . not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved." (Quotation marks omitted.)) Plaintiff's claim, therefore, lacks merit.

## B. DOCKET NO. 358983

In Docket No. 358983, plaintiff argues that the circuit court erred by awarding attorney fees in contravention of Michigan law. Specifically, plaintiff posits that, to obtain attorney fees under a contractual provision, like the lease, the party seeking the award must plead a claim to enforce the contractual term allowing for fees. We agree.

This Court reviews an award of attorney fees for an abuse of discretion. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). An abuse of discretion occurs when the circuit court's decision is "outside the range of reasonable and principled outcomes." *Id*. "A trial court necessarily abuses its discretion when it makes an error of law." *Id*. This Court reviews de novo the interpretation of the lease. *Clark*, 309 Mich App at 394.

"Michigan follows the 'American rule' with respect to the payment of attorney fees and costs." *Haliw v Sterling Heights*, 471 Mich 700, 706; 691 NW2d 753 (2005). "Under the American rule, attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Id*. at 707. As explained in *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007):

> An exception exists where attorney fees are provided by contract of the parties. Contractual provisions for payment of reasonable attorney fees are judicially enforceable. In other words, a contractual clause providing that in the event of a dispute the prevailing party is entitled to recover attorney fees is valid. [Quotation marks and citations omitted.]

In this case, after the circuit court awarded defendant summary disposition, defendant moved for an award of attorney fees under § 25.1 of the lease which provided:

> Tenant shall reimburse Landlord, upon demand, for any costs or expenses incurred by Landlord in connection with any breach or default under this Lease, whether or not suit is commenced or judgment entered. Such costs shall include legal fees and costs incurred for the negotiation of a settlement, enforcement of rights, or otherwise. *Furthermore, if any action for breach of or to enforce the provisions of this Lease is commenced, the court in such action shall award to the party in whose favor a judgment is entered, a reasonable sum as attorney's fees and costs. Such attorney's fees and costs shall be paid by the losing party in such action.* [Emphasis added.]

The circuit court granted defendant's motion.

There is nothing ambiguous about this lease provision. If an action for breach of contract is commenced and a judgment is entered by the court in such action, the court must award the prevailing party its reasonable costs and attorney fees. To make sure that there is no confusion, the lease further specified that the losing party shall pay the attorney fees and costs. These contractual provisions were judicially enforceable. *Fleet*, 274 Mich App at 589. The record reflects that plaintiff stated a claim for breach of the lease in its complaint. Defendant denied the allegations of breach in its answer and in its affirmative defenses reserved its right to request attorney fees and costs incurred in defending the action pursuant to the parties' contract. Defendant later moved for summary disposition and the court granted defendant summary disposition and dismissed plaintiff's lawsuit. Under the terms of the parties' lease, defendant, as the prevailing party in the action brought by plaintiff, was contractually entitled to an award of its reasonable attorney fees.

In *Pransky v Falcon Group, Inc*, 311 Mich App 164, 194-195; 874 NW2d 367 (2015), however, this Court explained:

> Because the authority to award attorney fees arises under the terms of the agreement, the attorney fees are a type of general damages. *Fleet* [*Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*], 274 Mich App [584,] 589-592[; 735 NW2d 644 (2007)] (holding that an award of attorney fees under a contractual provision constitutes general damages that need not be specifically pleaded). In order to obtain an award of attorney fees as damages under a contractual provision requiring such a payment, the party seeking payment must sue to enforce the fee-shifting provision, as it would for any other contractual term. See *Wilson Leasing* [*Co v Seaway Pharmacal Corp*], 53 Mich App [359,] 365[; 220 NW2d 83 (1973)] (stating that, in an action on a contract, the reasonable attorney fees allowed under the contract are an element of the debt owed); see also 25 CJS, Damages, § 85, pp 428-429 ("Contractual attorney's fees are recoverable only in a suit brought directly on the contract. Unlike statutorily permitted or rules-based attorney's fees, contractually based attorney's fees form part of the damages claim."). That is, the party seeking the award of attorney fees as provided under the terms of an agreement must do so as part of a claim against the opposing party.

Under *Pransky*, 311 Mich App at 195, in which the defendant moved for attorney fees pursuant to a contractual agreement, the circuit court could only award attorney fees and costs as damages on a claim brought under the lease. As in *Pransky*, the circuit court, by granting the motion requiring plaintiff to pay the fees, "in effect entered a judgment against [plaintiff] on a claim that was never brought." *Id*. "A trial court may not enter judgment on a claim that was not brought in the original action in the guise of a postjudgment proceeding." *Id*. It follows that the circuit court lacked authority to enter an award for attorney fees as damages for breach of the lease.

Defendant counters that nothing in the language of § 25.1 required it to bring a breach-of-contract claim for attorney fees. Defendant explains that, under the plain language of the lease, entry of a judgment is a condition precedent to the prevailing party's ability to collect fees and that a claim for prevailing-party attorney fees at the outset of the litigation would not have been ripe for consideration. Further, defendant distinguishes *Pransky* on the grounds that the contractual

-10-

language in that case did not contemplate a postjudgment award of fees and permitted recovery only if the plaintiff retained an attorney to enforce a collection action.

Nothing in the lease's attorney fee shifting provision excuses the prevailing party from complying with Michigan law requiring that a party seeking attorney fees under a contractual provision must state a claim against the opposing party to enforce the provision. The fact that an entry of judgment is a condition precedent to obtaining fees under § 25.1 does not except the parties to the lease from the requirements of Michigan law as defined in *Pransky*. Further, the fact that the contract language in *Pransky* differs from the lease's language in this case does not lead to a different conclusion. The general principles set forth in *Pransky* apply equally to all contractual agreements allowing for attorney fees. Nothing in *Pransky* indicates that its holding is limited to the contractual language in that case.

Finally, defendant points out that its claim for attorney fees would not have been ripe at the initiation of the action, given that no prevailing party then existed. Notwithstanding that such a claim would not have been ripe, *Pransky* appears to require a prevailing party to file a counterclaim or complaint to enforce the lease after the circuit court entered its summary disposition order.

Under *Pransky*, the circuit court erred by awarding attorney fees under the lease because defendant had not sought the award of attorney fees as part of a claim against plaintiff under the terms of the parties' agreement. *Pransky*, 311 Mich App at 194-195. Because our conclusion is dispositive, we do not consider plaintiff's other arguments.

Affirmed in Docket No. 358680. Reversed in Docket No. 358983. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ James Robert Redford

-11-